**Jeanette JESINGER, et al., Plaintiffs–Appellants,**

v.

**NEVADA FEDERAL CREDIT UNION, a federally-chartered credit union; Robert W. Fleischman, et al., Defendants–Appellees.**

**No. 92–15807.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1993.

Decided May 18, 1994.

---

Gerald Gillock, Barker, Gillock & Perry, Las Vegas, NV, for plaintiffs-appellants.

Samuel B. Benham, Hunterton & Naylor, Las Vegas, NV, and James P.C. Silvestri, Bongiovi & Silvestri, Las Vegas, NV, for defendants-appellees.

Before: TANG, TROTT, and FERNANDEZ, Circuit Judges.

Opinion by Judge TANG.

TANG, Circuit Judge:

Appellants are former members of the Board of Directors (collectively, the "Board" or "Board members") of Nevada Federal Credit Union ("NFCU"). On February 13, 1990, the Supervisory Committee of NFCU unanimously voted to suspend five of the Board members.[1] Two weeks later, the NFCU membership voted to sustain the Su-

pervisory Committee's action, pursuant to the rules and regulations of the Federal Credit Union Act ("FCUA"), 12 U.S.C. § 1751 *et seq.*

The Board members filed the instant action for wrongful removal and defamation against NFCU and each of the members of the Supervisory Committee (collectively, the "Supervisory Committee" or "Committee"). The district court granted summary judgment in favor of the Committee, concluding that the Board members did not have a cause of action under either federal statute or common law. The court further found that there was insufficient evidence upon which any trier of fact could find that there was defamation. The Board members appeal both conclusions. We have jurisdiction under 28 U.S.C. § 1291, and affirm.

## BACKGROUND

On January 31, 1990, the Board met at a regular meeting and voted 5–2 not to renew the employment contract of Robert Street, the President and CEO of NFCU for the previous seven years.[2] Because this action had not been previously discussed by the members, the Board decided to reconvene to reconsider their decision in light of legal advice.

The Board held a second meeting on February 2, 1990. Again, the Board voted 5–2 not to renew Mr. Street's employment contract. The Board notified Mr. Street immediately thereafter, and advised him that it no longer had any trust or confidence in him.

The next morning, Ms. Jesinger, the Chairman of the Board, contacted the Chairman of the Supervisory Committee,[3] Robert

---

1. At the time, the Board consisted of seven members. Five of the members are the appellants in this lawsuit: Jeanette Jesinger, who was the Chairman of the Board; Larry Barton; Donald Robb; Joseph L. Benson; and Horace Dude. The two remaining members were George Dammeir and Vincent Eckelkamp; no action was taken against the two.

2. A federal credit union is "a cooperative association organized ... for the purpose of promoting thrift among its members and creating a source of credit for provident or productive purposes." 12 U.S.C. § 1752(1). The board of directors has the general direction and control of the affairs of

a federal credit union. 12 U.S.C. § 1761b. Among its powers is the authority to renew or not renew the president's employment contract. *Id.*

3. The supervisory committee of a federal credit union may be characterized as the watchdog of the institution. One of its primary concerns is the safety and soundness of the institution. It is responsible for matters, such as, ensuring the promulgation of an annual audit and verifying passbooks. 12 U.S.C. 1761d. The supervisory committee also has the authority to suspend the board of directors. *Id.*

Fleischman, and informed him that the Board decided not to renew Mr. Street's employment contract because he had lost the Board's trust and confidence.

On February 8, 1990, the Supervisory Committee directed a letter to Ms. Jesinger, containing specific questions as to whether Mr. Street's termination was the result of any misconduct that threatened the safety or soundness of NFCU. A response was requested by February 12, 1990, four days later, because of the serious implications of the Board's action.

On February 9, 1990, an examiner for the National Credit Union Association ("NCUA"), Louis S. McCalla, contacted both Mr. Fleischman and Ms. Jesinger regarding the above letter. After speaking to Mr. Fleischman, Mr. McCalla contacted Ms. Jesinger and advised her that if she failed to respond to the Committee's letter by February 12, 1990, Mr. Fleischman intended to take the matter up with NFCU's membership. Ms. Jesinger failed to respond by the deadline, and Mr. Fleischman concluded the Board was ignoring the Supervisory Committee's urgent request for information regarding the Street decision.

Consequently, on February 12, 1990, the Supervisory Committee met to discuss what action, if any, should be taken against the Board for Mr. Street's termination. The Committee also considered previous problems relating to Board decisions. Prior investigation discovered abuses of credit card usage, travel, and compensation policies by the Board members. Indeed, in 1985, the NCUA characterized the rise in operating expenses by the Board as "lavish." The NCUA also called for the immediate return of personal computers purchased by NFCU for members of the Board. One year later, the NCUA again emphasized a reduction in "frill" operating expenses by the Board.

The Supervisory Committee consisted of five members, all of whom are appellees in this suit: Robert Fleischman, Roy Lawson, Donald Tews, Michael Olson, and Michael Remeika.

4. The Board members contend that the Committee refused to give them specific reasons for the suspensions before February 23, 1990, so as to place them at a disadvantage before the membership. It is noteworthy, however, that none of the

The Supervisory Committee's review of these matters resulted in the Committee's decision to suspend five of the Board members. The Committee then ordered the preparation of formal notices of suspension, which each appellant received a day or two later. On February 13, 1990, Mr. Fleischman announced a special membership meeting to allow the credit union membership to vote on the suspensions.

On February 23, 1990, the Committee formally notified, via hand-delivered letters, the Board members of the specific reasons for their suspensions.[4] These letters were provided to NFCU's membership at the special meeting conducted on February 26, 1990. During that meeting, Mr. Fleischman formally stated the reasons for the suspensions. Each Board member was then given an opportunity to address the membership and challenge the Committee's allegations. The membership voted to remove Ms. Jesinger, Mr. Robb, Mr. Benson, and Mr. Dude. The membership voted to retain Mr. Barton, but he resigned from the Board the following day. The Board members filed the instant action shortly thereafter.

## STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo. *Jones v. Union Pacific R. Co.*, 968 F.2d 937, 940 (9th Cir.1992). An appellate court's review is governed by the same standard used by trial courts under Federal Rule of Civil Procedure 56(c). *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). An appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law. *F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir.1992),

Board members testified during their depositions that he or she lacked sufficient time to prepare oral or written statements to present to the membership. Indeed, the Board members' retained counsel prepared a document specifically addressing the issues before the membership, which was given to the membership during the special meeting.

*cert. granted,* —— U.S. ——, 114 S.Ct. 543, 126 L.Ed.2d 445 (1993). The court must not weigh the evidence or determine the truth of the matters asserted but only determine whether there is a genuine issue for trial. *Id.*

## DISCUSSION

I. *Do the Board members state a cause of action for their discharge?*

■ The appellants contend that federal common law grants them a cause of action for their discharge and that the Supervisory Committee violated their due process rights "through abuse of the suspension process set forth in the credit union bylaws."

### A.

We note at the outset of our inquiry that the Board members fail to contend that the FCUA gives them either an express or an implied right of action for their removal. Rather, they argue that the district court erred in finding no private cause of action under federal common law.

■ It is well-settled that there is "no federal general common law." *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 640, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938)). In some limited areas, however, the Supreme Court has recognized that there is both the need and the authority to formulate "federal common law." *See United States v. Standard Oil Co. of California,* 332 U.S. 301, 308, 67 S.Ct. 1604, 1608, 91 L.Ed. 2067 (1947). Such instances are both "few and restricted" and fall into essentially two categories: where a federal rule of decision is "necessary to protect uniquely federal interests" and where "Congress has given the courts the power to develop substantive law." *Texas Indus.,* 451 U.S. at 640, 101 S.Ct. at 2067 (citing *Wheeldin v. Wheeler,* 373 U.S. 647, 651–52, 83 S.Ct. 1441, 1445, 10 L.Ed.2d

605 (1963) and *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 426, 84 S.Ct. 923, 939, 11 L.Ed.2d 804 (1964)); *see Mortgages, Inc. v. U.S. Dist. Court for Dist. of Nev.,* 934 F.2d 209, 213–14 (9th Cir.1991); *National Audubon Soc. v. Department of Water,* 869 F.2d 1196, 1201 (9th Cir.1988). Because the FCUA does not specifically authorize courts to develop substantive law, *see Ridenour v. Andrews Fed. Credit Union,* 897 F.2d 715, 722 (4th Cir.1990), we must address whether federal common law is necessary to protect federal interests.

Although this Circuit has yet to rule on this question, in *Barany v. Buller,* 670 F.2d 726 (7th Cir.1982), the Seventh Circuit held that federal common law remedies could be created under the FCUA. In that case, two former members of the credit union's credit committee were removed from office after reporting improper conduct by another member of the committee. In holding that the remedy of quo warranto was available as a matter of federal common law even though not specifically authorized by statute, the court reasoned that the unique federal interests behind the FCUA necessitated the creation of uniform remedies.[5] *Id.* at 733.

*Barany* has, however, been criticized. *See Ridenour,* 897 F.2d at 721. In *Ridenour,* the Fourth Circuit held that a member of a federal credit union Board of Directors did not state a cause of action under federal common law for his removal. The court carefully reviewed the statutory structure of the FCUA, as well as recent amendments to the FCUA by the Financial Institutions Reforms, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 1989 U.S.Code Cong. & Admin.News (103 Stat. 183). The court observed:

Congress originally provided administrative and judicial remedies for a credit union affiliated party when removed by the national Board, but in no other circumstances. More recently, Congress has amended the statute to create a remedy for whistle-blowing employees and manag-

---

5. Quo warranto is an ancient writ used by the King of England to determine if an individual's claim to an office or franchise is well-founded. If the individual is found to be in unlawful possession of the office, the individual is ousted. *See U.S. ex rel. State of Wisconsin v. First Fed. Sav.* *and Loan Ass'n,* 248 F.2d 804, 807–08 (7th Cir. 1957), *cert. denied,* 355 U.S. 957, 78 S.Ct. 543, 2 L.Ed.2d 533 (1958). In this way, quo warranto resembles an action for ejectment. *See Andrade v. Lauer,* 729 F.2d 1475, 1498 (D.C.Cir.1984).

ers who report to the Board or to the Attorney General, but not when the matter is handled by the local credit union's Supervisory Committee. Perhaps most significant of all may be the NCUA's choice not to give the bylaws that govern removal of board members the authority of an agency regulation: "Federal courts lack authority to impose more stringent [standards] under federal common law than those imposed by the agency charged by Congress with administering the comprehensive scheme." *City of Milwaukee v. Illinois*, 451 U.S. 304, 320, 101 S.Ct. 1784, 1794, 68 L.Ed.2d 114 (1981). *Ridenour*, 897 F.2d at 722. The court focused on the principle that "when Congress has legislated on a question that is claimed to be appropriate for the creation of federal common law, courts must assume that Congress has articulated all of the governing federal standards." *Id.* (citing *Clearfield Trust Co. v. United States*, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943) (federal common law may be invoked only "in absence of an applicable Act of Congress") and *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625, 98 S.Ct. 2010, 2015, 56 L.Ed.2d 581 (1978) (when federal legislation "speak[s] directly to a question, the courts are not free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless.")). Applying that principle, the Fourth Circuit concluded that fashioning a federal common law cause of action was precluded. *Id.* We find this reasoning compelling.

Congress provided a remedy in the FCUA: the *members* of the credit union vote either to affirm or reverse the suspension actions of the Supervisory Committee.[6] The process allows suspended officers or members to address the credit union membership and challenge a suspension. The provision of this remedial measure in the FCUA and the absence of any other remedies compel an assumption "that Congress deliberately omitted the . . . remedy" now being sought by the Board members. *See Barany*, 670 F.2d at 736. We affirm the district court's holding that the Board members do not state a cause of action under federal common law.

**B.**

■ The Board members' reliance on the Due Process Clause is also unavailing. Even though the structure of a federal credit union and its duties are highly regulated by federal law, this does not suffice to make the Supervisory Committee's actions "governmental action" for purposes of Constitutional restrictions. "[T]he principle that private action is immune from the restrictions of the Fourteenth Amendment is well established." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974).

■ Although the federal government regulates credit unions, regulation alone is not enough to make a private entity and a government agency interdependent. *Heiskala v. Johnson Space Ctr. Fed. Credit Union*, 474 F.Supp. 448, 453 (S.D.Tex.1979). "The control and management of a federal credit union is not vested in the federal government, but democratically in the members themselves and in their duly elected board of directors." *Id.* at 452. We therefore conclude that "the slight degree of government involvement in the business of federal credit unions does not warrant applying Constitutional requirements to these democratically controlled, non profit cooperatives." *Id.* at 453.[7]

**II.** *Defamation.*

■ The Board members next allege that the Supervisory Committee's removal charges were defamatory, and argue that the presence of genuine issues of material fact calls for reversal of the district court's sum-

---

**6.** Title 12 U.S.C. § 1761d states, in pertinent part, that:

The supervisory committee . . . may by a unanimous vote suspend any officer of the credit union or any member of the credit committee or of the board of directors, until the next members' meeting, which shall be held not less than seven nor more than fourteen days after any such suspension, at which meeting any

such suspension shall be acted upon by the members. . . .

**7.** Even if we found governmental action, we would find no constitutional violation. The Board members received actual notice of the allegations against them, as well as a forum—an opportunity to address the credit union membership—in which to challenge the allegations with well-prepared statements.

mary judgment. The Committee maintains that its statements were conditionally privileged and that the Board members failed to demonstrate an abuse of such privilege.

■ Nevada courts have relied on the Restatement (Second) of Torts to fashion appropriate rules in defamation cases.[8] *See Chowdhry v. NLVH, Inc.*, 109 Nev. 478, 851 P.2d 459, 467 (1993); *Nevada Indep. Broadcasting Corp. v. Allen*, 99 Nev. 404, 664 P.2d 337, 341 (1983). In order to establish a *prima facie* case of defamation under Nevada law, a plaintiff must prove: (1) a false and defamatory statement by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and, (4) actual or presumed damages. *Chowdhry*, 851 P.2d at 462 (citing the Restatement (Second) of Torts, § 558 (1977)). The Nevada courts have recognized, as well, that a qualified or conditional privilege exists where a defamatory statement is made "in good faith on any subject matter in which the person communicating has an interest, or in reference to which he [or she] has a right or a duty, if it is made to a person with a corresponding interest or duty." *Circus Circus Hotels, Inc. v. Witherspoon*, 99 Nev. 56, 657 P.2d 101, 105 (1983). Such a privilege may be abused by publication in bad faith, with spite or ill will, or some other wrongful motivation toward the plaintiff, and without belief in the statement's probable truth. *See Gallues v. Harrah's Club*, 87 Nev. 624, 491 P.2d 1276, 1277 (1971).

### A.

Between February 23 and February 26, 1990, the Supervisory Committee charged the Board members with failing to provide NFCU with detailed expense reports supported by receipts; improper use of NFCU credit cards; improper receipt of compensation as a member of the Board; failing to direct the affairs of NFCU in accordance with the NCUA; improper acceptance and retainer of a computer for personal use from NFCU; and failing to provide the Supervisory Committee with adequate reasons for the removal of the president of the credit union.[9]

These charges relate directly to each Board member's fitness to sit as a member. The Supervisory Committee has the responsibility to review and evaluate the performance of each member of the Board. *See* 12 U.S.C. § 1761d; Article X of the Bylaws of NFCU; Supervisory Committee Guide for Federal Credit Unions at 3. Moreover, the charges relate directly to the best interests of NFCU. We find, as did the district court, that the Committee reasonably concluded that the NFCU membership was entitled to be informed of the allegations against the Board. In other words, the Committee and the NFCU membership had a common interest in the charges against each of the members of the Board. *See Circus Circus Hotels, Inc.*, 657 P.2d at 105. We therefore affirm the district court's conclusion that the charges against the Board members were conditionally privileged.[10]

### B.

The Board members also argue, however, that even if a conditional privilege was appropriate in these circumstances, the Committee abused the privilege. The Board members contend that the Supervisory Committee subjectively "entertained serious doubts as to

8. The Supreme Court in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), pronounced that "except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State." Because the statements here were made in Nevada, Nevada law applies.

9. Not all Board members were charged with each of these acts or omissions.

10. Other courts have found a qualified privilege to exist under similar circumstances. *See e.g., Alford v. Utah League of Cities and Towns*, 791 P.2d 201 (Utah App.1990) (League and Board of unincorporated association shared common interest in communications that were the basis for discharging employee); *Parry v. George H. Brown & Associates, Inc.*, 46 Wash.App. 193, 730 P.2d 95 (1986) (communications between general partner and limited partners regarding former general partner were conditionally privileged); *Cuenca v. Safeway San Francisco Employees Fed. Credit Union*, 180 Cal.App.3d 985, 225 Cal.Rptr. 852 (1 Dist.1986) (board of directors and supervisory committee had common interest in communications relating to activities of fired employee); *Kainz v. Lussier*, 4 Haw.App. 400, 667 P.2d 797 (1983) (defendant acted in discharge of his corporate duties in reporting to shareholders on the affairs of plaintiff); *Aspell v. American Con-*

the truth of [the] publication[s]. Publishing with such doubt shows reckless disregard for truth or falsity and demonstrates actual malice." *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).

 Once a communication is determined to be privileged, "the burden shifts to the plaintiff to prove to the jury's satisfaction that the defendant abused the privilege by publishing the communication with malice in fact." *Circus Circus Hotels, Inc.,* 657 P.2d at 105. Actual malice is defined as knowledge of the falsity of the statement or a reckless disregard for the truth. *New York Times Co. v. Sullivan,* 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964); *Nevada Indep. Broadcasting Corp.,* 664 P.2d at 344. The plaintiff must satisfy his or her burden by establishing malice in fact by clear and convincing evidence. *St. Amant,* 390 U.S. at 731, 88 S.Ct. at 1325–26; *Alioto v. Cowles Communications, Inc.,* 519 F.2d 777, 779 (9th Cir.), *cert. denied,* 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 259 (1975).[11]

The Board members fail to evidence facts demonstrating the Supervisory Committee's malice. Although they admit the truth of the underlying facts, they assert conclusory allegations that the charges against them are untrue. Even if this was the case, demonstrating the untruthfulness of the charges does not establish actual malice. Indeed, the issue here is not whether the content of the statements was malicious, but whether the statements were maliciously published. Nevertheless, despite the Board members' protestations to the contrary, the record reveals little, if any, evidence that the Committee had serious doubts as to the truth of the charges against the Board members. Rather, the record supports the truthfulness of charges, such as the Board members' failure to provide NFCU with detailed expense reports supported by receipts, improper receipt of compensation, and improper use of NFCU credit cards. Moreover, the record reveals

virtually no evidence that the statements were maliciously published. Since we find no genuine issue of material fact, we affirm the district court's summary judgment on the issue of defamation.

### *CONCLUSION*

We affirm the district court's grant of summary judgment on the grounds that the Board members fail to state a cause of action under federal common law for their discharge and that there is no genuine issue of material fact as to the issue of defamation.

**AFFIRMED.**

---

*tract Bridge League of Memphis, Tennessee,* 122 Ariz. 399, 595 P.2d 191 (App.1979) (board acted pursuant to its duties to membership in evaluating and criticizing the actions of appellant).

**11.** Contrary to the Board members' assertion, "the question of whether the evidence in the

record in a defamation case is sufficient to support a finding of actual malice is a question of law." *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 685, 109 S.Ct. 2678, 2694, 105 L.Ed.2d 562 (1989).