46 F.3d 1144
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Milton A. RUDIN, Plaintiff-Appellant,
v.
Kitty KELLEY; Simon & Schuster, Inc.; Paramount
Communications, Defendants-Appellees.
 No. 93-55706.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1994.
Decided Jan. 6, 1995.
 
 Before: WIGGINS, KOZINSKI, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 FACTS
 
 2
 Appellant, Milton A. Rudin, brought an action against Respondents Kitty Kelley, Simon and Schuster, Inc., and Paramount Communications, alleging false advertising and false endorsement violations of the Lanham Act, and various libel actions under California state law.
 
 
 3
 Ms. Kelley, in her biography of Nancy Reagan, cited Rudin, Frank Sinatra's long-time lawyer, as a source.[1] Rudin, however, has produced a copy of the letter he sent to Kelley in response to her questions, wherein he curtly refused to answer her queries, and questioned the nature of her project. His only possible assistance in the entire matter was in referring Kelley to someone else.
 
 
 4
 Rudin claims that this false acknowledgment and thank you maligned him, making it appear that he helped with the book by providing confidential information to Kelley. Having been Mr. Sinatra's attorney, he complains that it also appears he violated professional confidences in doing so. The district court granted summary judgment for Respondents on the state law libel claims, finding no showing of "special damages." It also granted summary judgment for Respondents on Rudin's Lanham Act claims, finding Rudin failed to prove a likelihood of consumer confusion. Rudin appeals these rulings. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 DISCUSSION
 
 5
 We review the district court's grant of summary judgment de novo. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). We must determine, viewing the evidence in the light most favorable to Rudin, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 
 6
 We begin by noting that there has been much debate concerning the proper characterization of Rudin's Lanham Act claim. At various times during this case he has referred to this claim both as a false advertising claim and as a false endorsement/false association claim. We need not decide which type of claim is implicated. We find that regardless of the characterization, Rudin's claim must fail because he has failed to show any damages.
 
 
 7
 To prevail on his Lanham Act claim Rudin must prove "both the fact and the amount of damage." Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1407 (9th Cir.1993), cert. denied, 114 S.Ct. 64 (1993). To prevail on his state law causes of action, Rudin must show "special damages," defined as all damages "[plaintiff] has suffered in respect to his property, business, trade, profession or occupation...." Cal.Civ.Code Sec. 48a(4)(b). Rudin has failed to show any damages, and thus both his claims must fail.
 
 
 8
 Rudin has shown that his law practice dissolved one and a half years after publication of the book. He testified that he believed that the publication of the book contributed to the decline in his practice by diminishing his ability to attract new clients. As the district court noted, however, Rudin failed to produce evidence of a single potential client who was lost due to the book's reference.[2] Moreover, two other factors tend to indicate that the reference in Kelley's book was not the cause of the decline in Rudin's practice.
 
 
 9
 First, the nature of the reference to Rudin is not so clearly defamatory, or even noticeable, as to make the reference inherently likely to cause such severe damage to Rudin's practice. For Rudin to have lost potential clients because of Kelley's acknowledgment, the clients must first have read the book. They must also have pored over the lengthy list of references. (Rudin is 464th out of 611 listed references). They must have known who Rudin was. Then they must have attached some negative connotation to Rudin's inclusion on the list. The two posited reasons for such a negative reaction are that Rudin breached a confidence, or that he was associated with and/or approved of a scandalous work. Neither of these inferences is likely. Some of the Reagans' closest friends are also on the list of references. People familiar enough with the parties to scour the list would probably realize, accordingly, that not everyone on the list either divulged sensitive information or somehow endorsed the book. In the absence of any evidence to the contrary, we find it unlikely that any potential clients of Rudin took all of the aforementioned steps and then decided to take their legal business elsewhere based on Kelley's acknowledgment.
 
 
 10
 Second, and perhaps most convincingly, Respondents note that several other, undisputed factors are more likely culprits in the demise of Rudin's practice than Kelley's acknowledgment. For example, Rudin concedes that he made no effort to attract new clients during 1992. He also admits that other factors such as the recession may have been responsible for the decline of his practice. We agree that these other factors are more likely to have caused the decline in Rudin's practice than Kelley's acknowledgment.
 
 CONCLUSION
 
 11
 Because Rudin has failed to show that the references to him in Kelley's book caused him any damages, we AFFIRM the summary judgment in favor of Respondents on all counts.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 On page 8 of the book, in the "Acknowledgments" section, Kelley wrote: "My sources made the most important contribution to this book, and I am grateful to all for their help." The next paragraph begins, "My thanks to," followed by a list of 611 alphabetized names, with "Milton A. 'Mickey' Rudin" in the 464th position. At the end of the book are 43 pages of chapter notes, of which Kelley wrote: "These chapter notes lay out the author's sources in writing each chapter of the book. The notes identify the people interviewed and the documents and publications examined." Included in the notes to Chapter 17 (dealing with Nancy Reagan's receiving of an award), is a reference to "correspondence with Milton A. 'Mickey' Rudin: April 17, 18 and 19, 1989."
 
 
 [2]
 Nor was there any evidence of the loss of an existing client