53 F.3d 337
 RICO Bus.Disp.Guide 8816
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Edward BERMINGHAM; James Bunting; Philip H. Livingston,
Plaintiffs-Appellants,
v.
PLUMBING AND PIPEFITTING INDUSTRY LOCAL 38, et al.; UA Local
38, Defendants-Appellees.
 No. 93-15937.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 14, 1994.
Decided April 14, 1995.
 
 Before: HUG, CANBY, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Appellants brought this action against their Union (Plumbing and Pipefitting Industry Local 38), its officers, and several employers associations. The district court granted summary judgment in favor of appellees, dismissing several causes of action from appellants' amended complaint. This appeal is limited to review of the district court's order dismissing Appellant Livingston's civil RICO claim, which the district court directed be entered as a final judgment pursuant to Fed.R.Civ.P. 54(b). The district court held that Livingston lacks standing under civil RICO because he failed to demonstrate a concrete financial loss. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 Livingston alleges that appellees embezzled union funds to construct and maintain a luxury resort for personal gain, in violation of 18 U.S.C. Secs. 1961, et seq. Livingston alleges that the Joint Labor/Management Industry Board and the Joint Labor/Management Advisory Board diverted funds from the Health and Welfare Trust Fund ("H & WTF"), from other "shadow" trust funds, and from Local 38 members' wage package, into the Convalescent Trust Fund ("CTF"). The CTF's main asset is a resort facility, the Konocti Harbor Resort and Spa, which is open to the public. Livingston also alleges that appellees embezzled funds from the CTF directly into their own pockets, set up "questionable" loans, and used CTF employees to perform personal service at no compensation to the CTF. Finally, Livingston alleges that appellees engaged in mail fraud to protect their embezzlement scheme from discovery.
 
 DISCUSSION
 
 4
 We review de novo a district court's grant of summary judgment. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id. We also review de novo the question of standing. Wedges/Ledges of California, Inc. v. City of Phoenix, 24 F.3d 56, 61 (9th Cir.1994).
 
 
 5
 To obtain civil RICO standing, Livingston must prove a "concrete financial loss." Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1310 (9th Cir.1992), cert. denied, 113 S.Ct. 1644 (1993); see also 18 U.S.C. Sec. 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court.") (emphasis added). A speculative injury is not compensable under RICO. Imagineering, 976 F.2d at 1311; Oscar v. University Students Co-op. Ass'n, 965 F.2d 783, 787 (9th Cir.) (en banc), cert. denied, 113 S.Ct. 655 (1992). Livingston claims that he has suffered a financial loss from the Union's embezzlement of funds from the H & WTF, from which he is eligible for benefits, and transfer to the CTF, from which he is not eligible for benefits. He claims that if the money had not been transferred from the H & WTF to the CTF, he would have received higher medical benefits. In the alternative, he claims that if the funds had not been transferred and he had not received higher benefits, he would have received higher wages because the portion of employer contributions diverted from the H & WTF to the CTF would have gone directly to Livingston as higher wages, and because his own contributions to the H & WTF that were diverted to the CTF would have been paid to him in the form of lower assessments.
 
 
 6
 But the injury that Livingston alleges is far too speculative to confer standing under civil RICO. Had excess H & WTF contributions remained in the fund, it is mere speculation that those contributions would have trickled down to Livingston in the form of greater medical benefits or direct payments. First, the benefit might have inured to the employer, rather than Livingston, because the Union might not have negotiated the same level of employer contribution to the H & WTF in the absence of the CTF. Second, the benefit might have gone to members other than Livingston. The Industry Board has discretion to allocate negotiated increases in employer contributions among the various funds, and it is impossible to predict to which of the 26 trust funds the Industry Board would have allocated the money if not the CTF. For example, the money could have gone to the scholarship fund, the benefits of which Livingston is also not eligible. And finally, the money transferred to the CTF might have simply accumulated in the H & WTF, without lowering Livingston's assessments or increasing his health benefits.
 
 CONCLUSION
 
 7
 We affirm the district court's dismissal on summary judgment of Livingston's civil RICO claim because he has failed to prove an injury compensable under the statute. Livingston also argues that the seventh cause of action includes an ERISA claim. This argument is not properly before us. The district court entered a Rule 54(b) certification only for the RICO claim in the seventh cause of action. See Fed.R.Civ.P. 54(b) ("the court may direct the entry of a final judgment as to one or more but fewer than all of the claims....").
 
 
 8
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3