74 F.3d 1247
 40 Cont.Cas.Fed. (CCH) P 76,885
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES ex rel. Phillip W. AKWA, Plaintiff-Appellant,
v.
GENERAL ELECTRIC CORPORATION; ALCAN, Defendants-Appellees.
 No. 94-55939.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 21, 1995.
Decided Jan. 3, 1996.
 
 1
 Before: ALARCON and RYMER, Circuit Judges, and QUACKENBUSH,* Senior District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiff-appellant Phillip K. Akwa ("Akwa") appeals from the district court's order granting summary judgment in favor of defendants-appellees General Electric Co. ("GE") and Alcan Electrical and Engineering Co. ("Alcan"). Akwa contends that it was erroneous for the district court to hold "that the submission of quotes by a subcontractor and a subsequent bid by the contractor to the government in a sealed bid context cannot give rise to a violation of the False Claims Act." Appellant's Opening Brief, p. 11. We affirm because we conclude that Akwa failed to raise a genuine issue of material fact regarding whether GE and Alcan submitted, or conspired to submit, a false and fraudulent claim in violation of the False Claims Act, 31 U.S.C. Secs. 3729 et seq.
 
 I.
 
 4
 In the mid-1980s, an electrical upgrade was recommended for the Clear Air Force Station powerplant. The Government divided the proposed work into four bid items (bid items 1, 1A, 2A and 3A). Bid item 1A involved the replacement of the powerplant's static exciters. In November, 1988, the Government requested sealed bids from several small business contractors to perform the upgrade. GE did not qualify as a small business, and could not bid on the project as a prime contractor. GE was eligible to quote prices on the project as a subcontractor.
 
 
 5
 After receiving the Government's invitation for bid, both Alcan and Akwa began putting together their bids as prime contractors. Akwa received a price quote of $1,426,950 from GE on bid item 1A. Alcan received a price quote of $1,359,550 from GE on bid item 1A. Neither Akwa nor Alcan relied completely on GE's price quotations in calculating their bids, because GE had tied to the cost of the static exciters the costs for technical direction, operation and maintenance training, installation of the new static exciters, and removal of the old exciters. Neither Akwa nor Alcan intended to purchase these services from GE. Akwa telephoned GE's manufacturing plant directly, and received a price quotation of $212,380 for the static exciters. According to the declaration of its Senior Project Manager, Alcan rejected GE's price quote as excessive, and based its bid on the estimated cost of the static exciters alone.
 
 
 6
 When the bids were opened on February 7, 1989, the lowest lump sum bidder was Akwa, with a bid of $3,070,000. Alcan was the second lowest bidder at $3,328,757. Although the Government initially awarded the contract to Akwa, it withdrew this award after finding that Akwa's bond sureties were inadequate. The contract was then awarded to Alcan, the second lowest bidder.
 
 
 7
 Alcan then reopened negotiations with GE, and twice attempted to substitute GE static exciters with static exciters from another manufacturer. The Government refused to allow the substitution. Eventually, GE received the subcontract from Alcan on bid item 1A, based on a price of $753,600.
 
 
 8
 In its complaint, Akwa alleged a conspiracy between GE and Alcan to submit a fraudulently inflated bid to the Government, and to rig the bidding process, in violation of the False Claims Act. The Government declined to join the action. The district court granted the defendants' motions for summary judgment.
 
 II.
 
 9
 Akwa contends that the district court erred in granting summary judgment in GE's and Alcan's favor because there are genuine issues of material fact as to whether GE's fraudulent price quote, as reflected in Alcan's bid, resulted in the presentation of a false claim in violation of the False Claims Act.[1] We review de novo the district court's grant of summary judgment. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994).
 
 
 10
 The district court did not explain the basis for its conclusion that "none of the quotations submitted by GE to Alcan on February of 1989, October 1989, and January 1990, nor the bid submitted by Alcan to the Government, constituted a 'claim' within the meaning of the False Claims Act." Akwa argues that the district court misunderstood his theory of the case. He asserts that he has never contended that a competitive bid is a "claim." Since our review is de novo, however, we need not decide whether the district court correctly interpreted Akwa's legal argument regarding what constitutes a claim. We are free to affirm an order granting summary judgment on any ground fairly presented by the record. Rano v. Sipa Press, Inc., 987 F.2d 580, 584 (9th Cir.1993).
 
 
 11
 Akwa asserts that GE fraudulently inflated its price quote for bid item 1A by $500,000, so that it could provide a $500,000 "kickback" to the prime contractor who elected to use GE products on bid items 1 and 2A. Akwa argues that Alcan's bid was fraudulent because it incorporated GE's inflated quote. According to Akwa, both the bid and the quote resulted in the filing of false claims because the Government made payments to Alcan based on the fraudulent misrepresentations contained in the bid.
 
 
 12
 Akwa also contends that Alcan conspired with GE to "rig the bidding process" and to provide Alcan with a "kickback" in exchange for agreeing to work with GE on the other bid items. As evidence of this conspiracy, Akwa cites: (1) an internal GE memo;[2] (2) a meeting between Alcan and GE representatives on February 6, 1989, the day before the formal submission of bids to the Government; and (3) the $605,000 post-bid price reduction afforded Alcan by GE.
 
 
 13
 GE and Alcan argue that the memo, the meeting, and the price reduction do not support an inference of a conspiracy because they were normal business practices, consistent with permissible competition. See Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 588 (1986) (citing Monsanto Co. v. Spray-Rite Service Corp., 465 U.S. 752 (1984)) ("conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy"). We agree.
 
 
 14
 GE's internal memo outlined its marketing strategy for the Clear Air Force Station project and indicated that preferential treatment would be given to the contractor who would commit to working with GE. Under our free market economy, a business organization may offer its goods and services at a lower cost to any entity with which it chooses to do business. Such a practice is pro-competitive because it benefits the consumer, or in this case--the taxpayer. Akwa has failed to demonstrate that there is anything sinister or illegal about such business practices, or that they prove the existence of a conspiracy to violate the False Claims Act.[3] Likewise, Akwa has not demonstrated that GE's meeting with Alcan signified anything more than a routine business transaction. According to GE, it met with Alcan and "every other prime contractor who was willing to do so" to discuss its quotation.
 
 
 15
 Akwa also has not shown that the price reduction obtained by Alcan was the result of anything other than competitive business negotiations. The record reveals that, after receiving the bid, Alcan twice unsuccessfully attempted to substitute other static exciters in place of GE equipment. The Government rejected both attempts. This undisputed evidence demonstrates that GE and Alcan negotiated at arms length and did not conspire to create a false claim. Akwa has failed to present a plausible motive for a conspiracy between GE and Alcan to submit a fraudulently inflated bid. See Matsushita Elec. Industrial Co., 475 U.S. at 596 ("The absence of any plausible motive to engage in the conduct charged is highly relevant to whether a 'genuine issue for trial' exists within the meaning of Rule 56(e).") Such a conspiracy would be self-defeating for Alcan, as it might cause it to lose the contract award because its bid was too costly.
 
 
 16
 Akwa has also failed to raise a genuine issue of material fact regarding whether GE fraudulently inflated its quote to Alcan. Akwa merely points to the disparity between the price quotes Akwa obtained from GE's West Coast distributor and those submitted by GE's original equipment manufacturer. It is undisputed, however, that this price differential is reflective of the additional services which GE's West Coast distributor tied to the underlying static exciters to be used on bid item 1A. Proof that two discrete packages of goods and services have different prices does not demonstrate that the price of one of them has been fraudulently inflated.
 
 
 17
 Moreover, Akwa has failed to raise a genuine issue of material fact regarding whether Alcan used GE's quote in preparing its bid. Alcan asserts that it rejected GE's price quote as excessive, and based its bid on its own experience. Akwa did not offer any evidence to refute this assertion. Akwa argues that "[w]hether a trier of fact would accept the statements made in [defendants'] declarations after both direct and cross-examination at trial is a matter which cannot be determined as a 'matter of law.' " Akwa's reliance on the notion that missing facts may be supplied in opposition to a motion for summary judgment by relying on the impeachment at trial of the moving party's witnesses is misplaced. "The nonmoving party may not merely state that it will discredit the moving party's evidence at trial and proceed in the hope that something can be developed at trial in the way of evidence to support its claim." T.W. Elec. Service v. Pacific Elec. Contractors, 809 F.2d 626, 630 (9th Cir.1987). "Instead, it must produce at least some significant probative evidence tending to support the complaint." Id.
 
 
 18
 AFFIRMED.
 
 
 
 *
 Honorable Justin L. Quackenbush, Senior United States District Judge, for the Eastern District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Section 3729(a) provides, in pertinent part:
 (a) Liability for certain acts.--Any person who--
 (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false claim for payment or approval;
 (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim allowed or paid;
 (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid ... is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person....
 31 U.S.C. Sec. 3729.
 
 
 [2]
 In the internal memo, entitled "Clear AFS Sales Plan--How We Can Write an Order," a GE sales representative assessed each of the eight bidding contractors. With respect to Alcan, the sales representative observed: "Electrical contractor located in Anchorage. Have working relationship with contractor. Is willing to work with us." With respect to Akwa, the sales representative noted that Akwa had obtained a price quote from GE's original equipment manufacturer, and commented "Don't trust him." The sales representative set forth GE's plan as follows:
 --Choose one contractor to work with that will commit to working with us.
 --Review with him our vendor items, maybe he has a better price than we do.
 --Give the contractor a price advantage for his willingness to work with us.
 --For the rest of the bidders, quote everyone the same price. Break out price as requested.
 
 
 [3]
 Akwa asserted in his brief and at oral argument that Congress has imposed "an affirmative duty of disclosure upon those who deal with the government." In particular, Akwa asserts that the anti-kickback provision of Alcan's contract with the Government requires it to disclose preferential treatment. However, Akwa conceded in oral argument that this provision does not apply to the initial bidding process