74 F.3d 1245
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Cookie DASH, Plaintiff-Appellant,
v.
ROCHE LABORATORIES; Roche Dermatologics; Roche Products,
Inc.; Richard Salit, Defendants.
and
Hoffman-La Roche, Inc., Defendant-Appellee.
 No. 94-55814.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 15, 1995.
Decided Jan. 11, 1996.
 
 1
 Before: ALARCON and RYMER, Circuit Judges, and QUACKENBUSH,* Senior District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiff-appellant Cookie Dash appeals from the district court's order granting summary judgment in favor of defendant-appellee Hoffman-La Roche, Inc. ("Roche") in this products liability action. Dash contends that the district court erred in granting summary judgment because there is a genuine issue of material fact whether Roche's warnings were adequate. We affirm because Roche expressly warned physicians prescribing Accutane that a possible side effect of its use is that it may cause persistent or permanent eye irritation.
 
 I.
 
 4
 This action arises out of a dry eye condition allegedly sustained by Cookie Dash as a result of her use of Accutane, a prescription drug produced by Roche. Dash ingested Accutane from September 11, 1989 to January 25, 1990 as treatment for a severe cystic acne condition. After ending her treatment, Dash experienced increasing problems with her eyes. Beginning in June, 1990, she consulted with several ophthalmologists, and was diagnosed as suffering from dry eyes. Dash subsequently filed this action alleging that Roche failed to provide an adequate warning of the risk of dry eyes associated with Accutane use.
 
 II.
 
 5
 Dash contends that the district court erred in granting Roche's motion for summary judgment because genuine issues of material fact exist regarding the adequacy of Roche's warnings. We review de novo a district court's grant of summary judgment. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact. Id.
 
 
 6
 In this diversity action, Roche's duty to Dash is governed by California law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938). Under California law, Roche had a duty to warn of dangers associated with the use of Accutane about which it knew or should have known. See Brown v. Superior Court, 751 P.2d 470, 475, 477 (1988) ("producer of a properly manufactured prescription drug may be held liable for injuries caused by the product only if it was not accompanied by a warning of dangers that the manufacturer knew or should have known about"). Because Accutane is a prescription drug, however, Roche was required to warn only Dash's physician, and not Dash herself. See id. at 1061-62 (manufacturer of a prescription drug is required to warn only physicians, and not patients, of risks associated with the drug).
 
 
 7
 Dash argues that the "condition that [she] ended up with is a significantly different one than warned about by Roche." Dash contends that she suffers from "a severe dry eye condition that has required the continual use of artificial tears, as well as the insertion of collagen plugs, which are devices to enable the individual to retain moisture in the eye." These symptoms "have continued to trouble plaintiff for a period of over four years, continuing to the present."
 
 
 8
 Dash contends that the opinion expressed by Dr. Sidney Lerman in his affidavit raises a genuine issue of material fact concerning the adequacy of the warning given to physicians concerning the potential side effects of Accutane. Dr. Lerman, an ophthalmologist, alleged that Roche:
 
 
 9
 did not adequately provide a warning to the prescribing physician about the potential danger of the risk of permanent dry eye conditions. The warning section indicated "dry eyes and decrease in night vision have been reported and in rare instances have persisted." In my opinion, this warning was not adequate, in that it did not provide the physician with a warning about the potential risk of severe and permanent dry eye conditions, that could persist months or even years following the end of Accutane treatment.
 
 
 10
 Dr. Lerman's opinion does not conflict with the facts set forth in the written warning. Accordingly, it does not raise a genuine issue of material fact concerning the adequacy of the warning given by Roche. Roche's patient information brochure, which Dash's physician gave to her, contained the following language:
 
 
 11
 ACCUTANE MAY CAUSE SOME LESS COMMON, BUT MORE SERIOUS, SIDE EFFECTS. BE ALERT FOR ANY OF THE FOLLOWING:
 
 
 12
 * * *
 
 PERSISTENT FEELING OF DRYNESS OF THE EYES
 
 13
 * * *
 
 
 14
 IF YOU EXPERIENCE ANY OF THESE SYMPTOMS OR ANY OTHER UNUSUAL OR SEVERE PROBLEMS, DISCONTINUE TAKING ACCUTANE AND CHECK WITH YOUR DOCTOR IMMEDIATELY. THEY MAY BE THE EARLY SIGNS OF MORE SERIOUS SIDE EFFECTS WHICH, IF LEFT UNTREATED, COULD POSSIBLY RESULT IN PERMANENT EFFECTS.
 
 
 15
 The package insert accompanying the drug further warned that "[d]ry eyes and decrease in night vision have been reported and in rare instances have persisted." Thus, contrary to Dr. Lerman's interpretation of the warning, the brochure expressly warns physicians that a side effect of the use of Accutane is persistent or permanent dryness of the eyes.[1]
 
 
 16
 Under California law, interpretation of the adequacy of the written language of a warning is a question of law which can be decided on summary judgment. Temple v. Velcro USA, Inc., 196 Cal.Rptr. 531, 532 (1983). A written warning is adequate if it directly warns in plain and explicit terms of the specific risk that has caused injury to plaintiff. Kearl v. Lederle Laboratories, 218 Cal.Rptr. 453, 467 (1985). Roche's package insert and brochure clearly and explicitly warned Dash's physician of the risk that the use of Accutane might result in a persistent or permanent dry eye condition. We conclude this warning was adequate as a matter of law.
 
 
 17
 AFFIRMED.
 
 
 
 *
 Honorable Justin L. Quackenbush, Senior United States District Judge, for the Eastern District of Wahington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Dash apparently argues that Roche's warning of the risk of "persistent" dry eyes does not sufficiently warn of the risk of a "permanent" dry eye condition. This argument is unpersuasive. Roche's warnings explicitly state that the side effects may be "permanent." Moreover, "persistent" and "permanent" are synonymous. Webster's New World Dictionary (3d ed. 1988) defines the terms as follows:
 persistent ... continuing to exist or endure; lasting without change ...
 permanent: lasting or intended to last indefinitely without change ... lasting a relatively long time ...
 Dash also argues that Roche's information brochure "creates in the patient's mind the impression that once you become aware of dry eyes, the condition can be treated, and it will not be permanent." Dash confuses "treatment" with "cure." Webster's New World Dictionary (3d ed. 1988) defines "treat" as "... to give medical or surgical care to (someone) or for (some disorder) ..." Dash admits that she has been able to seek treatment for her dry eye condition in the form of artificial tears and collagen plugs.