**Denise M. PARKER, Plaintiff,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

**CIV 95–0049–PHX–SMM.**

United States District Court,
D. Arizona.

June 5, 1996.

1344

Richard A. Segal, Gust Rosenfeld, Phoenix, AZ, for plaintiff.

Andrew Abraham, Burch & Cracchiolo P.A., Phoenix, AZ, for defendant.

## MEMORANDUM OF DECISION AND ORDER

McNAMEE, District Judge.

Defendant removed this action from Maricopa County Superior Court based on diversity jurisdiction. Plaintiff, an Arizona resident, alleges breach of contract and bad faith against Defendant, a Maine corporation. Pending before the Court is Defendant's Motion for Summary Judgment.[1] On May 13, 1996, counsel for both parties appeared before the Court and presented oral argument.

---

1. Defendant also moved to strike portions of Plaintiff's Statement of Facts. The Statement of Facts does not constitute evidence. Because of the limited value of the Statement of Facts, the Court finds it unnecessary to grant Defendant's motion to strike.

## I. BACKGROUND

On May 5, 1992, Plaintiff applied for a disability income insurance policy ("the Policy") for a monthly benefit amount of $4,460.00. *See* Def.'s Ex. 1. In the application, Plaintiff stated that she had seen her personal physician, Dr. Anderson, for a pap smear in 1991, and another physician in 1985 for a mitral valve prolapse. *See id.* at 4. Plaintiff also stated that in the past five years, she had not consulted with any other physician, psychiatrist, psychologist, counsellor, chiropractor, or other practitioner for any reason, including regular checkups. *See id.* In the supplemental application, Plaintiff denied ever having been told or treated for, among others, chronic fatigue. *See* Def.'s Ex. 2. As of May, 1992, Plaintiff was an occupational therapist and had been operating her own business for a period of ten years. *See id.* at 1.

On October 15, 1992, Defendant issued the Policy, effective October 22, 1992. *See* Def.'s Ex. 3. In December of 1992, Dr. Clark Hansen diagnosed Plaintiff with chronic Epstein–Barr Syndrome. In May of 1993, Dr. Scott Rigdon diagnosed Plaintiff with "chronic fatigue syndrome [2] secondary to chronic Epstein–Barr virus," noting that Plaintiff "has been totally incapacitated by this condition since ... [Spring of 1992]." *See* Def.'s Ex. 11. On July 14, 1993, Plaintiff submitted a disability claim alleging that she became totally disabled on June 4, 1993, as a result of chronic fatigue immune deficiency syndrome. *See* Def.'s Ex. 12. Because Plaintiff sought benefits within two years of the issuance of the Policy, Defendant investigated the claim. After the investigation, Defendant denied Plaintiff's claim based misrepresentation on the application, attempted to rescind the Policy, and returned the premiums paid. *See* Def.'s Ex. 13. Defendant informed Plaintiff that "[h]ad [Defendant] known this informa-

tion, it would not have issued [the Policy] as applied for." *See* Def.'s Ex. 14, at 2.

## II. STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (1995); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Jesinger v. Nevada Federal Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). Substantive law determines which facts are material. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Jesinger,* 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The dispute must also be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Jesinger,* 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552; *see also Citadel Holding Corp. v. Roven,* 26 F.3d 960, 964 (9th Cir.1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Celotex,* 477 U.S. at 317, 106 S.Ct. at 2549. The party opposing

---

**2.** "Chronic fatigue syndrome (CFS) previously known as Chronic Epstein–Barr virus syndrome, and also currently called chronic fatigue and immune deficiency syndrome, is a systemic disorder consisting of a complex of variable signs and symptoms which may vary in duration and severity." *Rose v. Shalala,* 34 F.3d 13, 16 (1st Cir.1994) (describing chronic fatigue syndrome for the purpose of determining disability under the Social Security Act). The disease is characterized by:

the presence of persistent unexplained fatigue and by the chronicity of other symptoms. The most prevalent symptoms include episodes of low-grade fever, myalgia, headache, painful lymph nodes, and problems with memory and concentration. The symptoms fluctuate in frequency and severity and may be seen to continue over a period of many months.

*Id.* at 16–17. However, "[t]he etiology and pathology of the disorder have not been established." *Id.* at 16.

summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986); *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir. 1995).

## III. DISCUSSION

Defendant argues that: (1) breach of contract does not exist because the Policy expressly excludes Plaintiff's claim as based on a pre-existing condition; and (2) the Policy is void because Plaintiff committed legal fraud.

### A. *Pre-existing Condition*

 "Provisions of insurance contracts must be construed in a manner according to their plain and ordinary meaning." *Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 534, 647 P.2d 1127, 1132, *cert. denied,* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982). In limited situations, however, even an unambiguous term in standardized insurance contracts will not be enforced where the insured did not reasonably expect it, did not receive full and adequate notice, the insurer's activity created an objective impression of coverage, or the insurer induced the insured to reasonably believe that she had coverage. *See Gordinier v. Aetna Casualty & Surety Co.,* 154 Ariz. 266, 273, 742 P.2d 277, 284 (1987). The insurer has the burden of establishing that an exclusion, viewed in the context of the entire policy, unambiguously excludes coverage. *See Sparks,* 647 P.2d at 1132. Plaintiff does not argue that the Policy terms are ambiguous.

 The Policy contains a "Pre[-]existing Condition Limitation" that provides:

This policy does not pay benefits which are based on a pre-existing condition if;

1. the pre-existing condition is not disclosed or is misrepresented in the application; and

2. the pre-existing condition causes a disability or other loss during the first two years after the effective date of the coverage.

Benefits will not be paid if they are based on disability that began before the effective date of the coverage.

*See* Def.'s Ex. 1, at 10. The Policy defines a "Pre[-]existing condition" as:

[A]n injury or sickness suffered by [the insured] which exists on the effective date of the coverage and, during the past five years, either:

1. was diagnosed;

2. caused [the insured] to receive medical advice or treatment; or

3. caused symptoms for which an ordinarily prudent person would have sought medical advice or treatment.

*Id.* at 6. " 'Sickness' means a mental or physical illness or condition which has been diagnosed or treated." *Id.*

Defendant argues that Plaintiff's claim is precluded as a pre-existing condition because she experienced symptoms prior to the issuance of the Policy that led to the diagnosis of chronic fatigue syndrome. Plaintiff does not dispute that she experienced symptoms of fatigue, allergy, sleeplessness, and mental dullness prior to May of 1992. Rather, Plaintiff argues that because she was not diagnosed with a sickness or illness, she did not have a pre-existing condition.

Here, the parties do not dispute that Plaintiff failed to disclose her previous health problems on the Policy application or that Plaintiff sought benefits within the first two years of obtaining the Policy. Rather, the parties dispute whether Plaintiff suffered an injury or sickness that existed during the five years prior to the date of coverage and caused Plaintiff to receive medical advice or treatment. *See id.* Plaintiff argues that a condition is pre-existing only if she was treated or diagnosed for chronic fatigue syndrome. The Policy, however, does not limit the exclusion to a specific diagnosis. Rather, the Policy excludes any illness or condition that (1) caused Plaintiff to receive medical advice or treatment prior to October 22, 1992, and (2) caused Plaintiff's current disability of chronic fatigue syndrome. *See* Def.'s Ex. 1, at 6, 10.

### 1. Treatment Prior to October 22, 1992

Plaintiff's medical records demonstrate that she received treatment, prior to the issuance of the Policy, for symptoms related to fatigue. For example, on August 21, 1992, Plaintiff visited Dr. Hansen for "allergies, swollen eyes, fatigue, frequent viruses in the winter" and "difficulty getting up in the morning and becoming alert." *See* Def.'s Ex. 5; Def.'s Ex. 4 ("Pl.'s Dep."), at 45–50. Plaintiff also stated that she has had this condition for "several y[ea]rs" and that it had been "several y[ea]rs" since she "really felt good." *Id.* at 1. Plaintiff further noted that she frequently felt " 'spacey,' " "mental dullness," "apathy," "poor memory," "impatient," "indecisive," "nervous," and "shaky," gets headaches if she goes without food, and had "poor concentration." *Id.* at 2. Plaintiff stated the existence of "fatigue or lethargy" and getting "tired 1–3 hours after eating." *Id.* Plaintiff also related that she experienced "fevers" and "sore throats," is "sensitive to weather changes," and has a tendency to "catch colds easily." *Id.* at 3. In addition, Plaintiff experienced "restless sleep," "need[ing] 10+ hours of sleep," and having vivid, frightful, and anxious dreams. *Id.* at 4. Plaintiff reported similar symptoms on August 29, 1991, September 11, 1991, September 27, 1991, June 5, 1992, and September 24, 1992. *See* Def.'s Ex. 6, at 1–4; Pl.'s Dep., at 53–78. Plaintiff also visited other doctors on October 9, 1991, May 14, 1992, June 24, 1992, for complaints of sinus problems and "fatigue and spaciness." *See* Def.'s Ex. 7–9; Pl.'s Dep., at 78–80. Plaintiff's medical record clearly demonstrate that Plaintiff's complaints of fatigue, mental dullness, and sleeplessness are conditions that for which she received medical advice or treatment prior to October 22, 1992.

### 2. Cause of Chronic Fatigue Syndrome

Plaintiff argues that she was not aware that she had chronic fatigue syndrome prior to the effective date of the Policy. In support, Plaintiff presents Dr. Hansen's letter to Defendant that states "[t]here was no evidence [prior to May of 1992] for the substantiation of a diagnosis of Chronic Fatigue and Immune Dysfunction Syndrome." *See* Pl.'s Ex. 2, at 1. Dr. Hansen, however, stated that the first indication of any immune dysfunction was in July of 1992. *See* Pl.'s Ex. 2, at 2. Indeed, Dr. Hansen confirmed the diagnosis of chronic fatigue syndrome on December 18, 1992, "due to the appearance of the blood test titer profile and the chronic fatigue, and recurring infections that [Plaintiff] had been experiencing over the previous six months, in addition to her inhalant allergies." *See id.*

Plaintiff's medical records demonstrate that Plaintiff continued to have similar symptoms and that Dr. Rigdon subsequently diagnosed Plaintiff's symptoms as chronic fatigue syndrome. Indeed, Dr. Hansen noted that Plaintiff's fatigue started in 1986 and had developed the onset of severe fatigue and mental dullness, requiring twelve hours of sleep, two years prior to December 1992. *See* Def.'s Ex. 6, at 5. In addition, Dr. Rigdon, who diagnosed the chronic fatigue syndrome, noted that Plaintiff "has been totally incapacitated by this condition since [Spring of 1992]." *See* Def.'s Ex. 11. Based on Plaintiff's medical records, the Court finds overwhelming evidence that Plaintiff's prior health complaints, for which she sought medical treatment, constitute a sickness that caused the diagnosis of chronic fatigue syndrome.

Accordingly, Plaintiff's prior health complaints constitute a "pre-existing condition," which is excluded from coverage. As such, Plaintiff has failed to create a genuine issue of material fact with which to proceed with her breach of contract claim. *See Sparks,* 647 P.2d at 1132; *Marshall v. UNUM Life Ins. Co.,* 13 F.3d 282, 283 (8th Cir.1994) (affirming summary judgment because plaintiff conceded the existence of a pre-existing condition and failed to set for a genuine issue of material fact questioning a causal link between the chronic fatigue syndrome and the pre-existing condition). As such, the Court grants summary judgment of Plaintiff's claim for coverage based on her pre-existing condition. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

### B. Fraud

Defendant also argues that Plaintiff's application contains material misrepresentations and omissions that implicate fraud as a

matter of law. Because the Court concludes that Defendant properly denied Plaintiff's claim based on the Policy's pre-existing condition clause, it finds that a discussion of legal fraud is unnecessary.

### C. *Insurance Bad Faith*

Plaintiff agrees to the dismissal of the bad faith claim. *See* Pl.'s Resp., at 8. The Court grants the dismissal as appropriate.

### IV. CONCLUSION

For the foregoing reasons,

**IT IS THEREFORE ORDERED** Defendant's Motion for Summary Judgment with respect to Plaintiff's breach of contract claim (Count I) is GRANTED. (DOC # 27). The Clerk of the Court shall dismiss Plaintiff's bad faith claim (Count II).

**IT IS FURTHER ORDERED** Defendant's Motion to Strike is DENIED.

**IT IS FURTHER ORDERED** the Clerk of the Court shall enter judgment accordingly.