Paul W. RIDENOUR; Oliver H. Perry, II; Paula A. Geitner; Judith L. Hopper, Plaintiffs–Appellants,

v.

ANDREWS FEDERAL CREDIT UNION; Frank J. Colson, Chairman, Board of Directors; Lasalle Petty, Jr., Col. Vice Chairman, Board of Directors; Leo M. Neff, Secretary and Member Board of Directors; Woodrow W. Jenkins, Treasurer and Member Board of Directors; William J. Baldridge; Ronald J. Fitzgerald; Frederick Szwed, Members, Board of Directors; Ronald G. Nahas; Jack Arzoomanian, Chairman, Supervisory Committee; William F. Brooks, Defendants–Appellees,

National Credit Union Administration, Amicus Curiae.

Oliver H. PERRY, II; Paul W. Ridenour; Paula A. Geitner; Judith L. Hopper, Plaintiffs–Appellants,

v.

ANDREWS FEDERAL CREDIT UNION; Frank J. Colson, Mr., Chairman, Board of Directors; Lasalle Petty, Jr., Col. Vice Chairman, Board of Directors; Leo M. Neff, Secretary and Member Board of Directors; Woodrow W. Jenkins, Treasurer and Member Board of Directors; William J. Baldridge; Peter J. Orlik, Jr.; Ronald J. Fitzgerald; Ronn M. Hamrah, Lt. Col.; Frederick Szwed, Members, Board of Directors; Ronald G. Nahas, President; Jack Arzoomanian, Chairman, Supervisory Committee; William F. Brooks, Defendants–Appellees,

National Credit Union Administration, Amicus Curiae.

Judith L. HOPPER; Paul W. Ridenour; Oliver H. Perry, II; Paula A. Geitner, Plaintiffs–Appellants,

v.

ANDREWS FEDERAL CREDIT UNION; Frank J. Colson; Lasalle Petty, Jr., Col. Vice Chairman, Board of Directors; Leo M. Neff, Secretary and Member Board of Directors; Woodrow W. Jenkins, Treasurer and Member Board of

Directors; William J. Baldridge; Peter J. Orlik, Jr.; Ronald J. Fitzgerald; Ronn M. Hamrah, Lt. Col.; Frederick Szwed, Members, Board of Directors; Ronald G. Nahas, President; Jack Arzoomanian, Supervisory Committee, Defendants–Appellees,

National Credit Union Administration, Amicus Curiae.

Nos. 88–2173, 88–2197 and 88–2198.

United States Court of Appeals, Fourth Circuit.

Argued July 10, 1989.

Decided March 2, 1990.

Rehearing and Rehearing In Banc Denied March 27, 1990.

William J. Kenney (William J. Kenney & Associates, P.C., Washington, D.C., on brief), for plaintiffs-appellants.

Francis Joseph Nealon (Marianne P. Eby, Amy S. Owen, Miles & Stockbridge, Washington, D.C., Paul W. Grimm, Robert Smith, Jordan, Coyne, Savits & Lopata, Baltimore, Md., on brief), for defendants-appellees.

Before ERVIN, Chief Judge, and PHILLIPS and WILKINSON, Circuit Judges.

PHILLIPS, Circuit Judge:

Paul Ridenour, Oliver Perry, Paula Geidner, and Judith Hopper appeal the district court's order dismissing for lack of subject matter jurisdiction their claims against Andrews Federal Credit Union and several individual defendants relating to alleged adverse employment actions taken against them by the defendants. The appellants sought recovery on the ground that the credit union and some of its officers violated rights secured to them, in their capacity as shareholders-members of the defendant credit union, by the Federal Credit Union Act, 12 U.S.C. §§ 1751 et seq. (FCUA). In addition, they alleged violations of Title VII, 42 U.S.C. § 2000e, and breaches of state law tort and contract duties. The district court held that it lacked jurisdiction because the claims relating to the FCUA did not "arise under" federal law, the Title VII claims had not satisfied jurisdictional prerequisites, and no independent jurisdictional basis existed over the pendent state claims. We affirm dismissal of the federal claims, though on somewhat different grounds as to the claims under the FCUA. We remand the state claims for the court to determine whether to exercise pendent jurisdiction over them.

I

Until 1987, appellants Geidner, Hopper, and Perry were supervisory employees of the local Andrews Federal Credit Union, and appellant Ridenour served as Secretary–Treasurer of the credit union and on its board of directors. In their complaints

in the district court, the appellants alleged that Ronald Nahas, the President of the credit union and one of the numerous individual defendants, had some time before 1986 adopted a pattern and practice of overt sexual harassment of credit union employees. Responding to complaints from employees under their supervision during 1986 and 1987, Geidner, Perry, and Hopper reported Nahas' allegedly offensive practices to Ridenour in his capacity as an officer and director of the credit union. After investigation and inquiry, Ridenour compiled a report concerning Nahas' conduct and, pursuant to federal regulations, submitted the report to the supervisory committee of Andrews Federal Credit Union.

In November 1987, the board of directors removed Ridenour from his position on the credit union's board of directors. Ridenour had been elected to a new three-year term in March 1987, but had not been renominated as Secretary–Treasurer. His removal from the Board instigated the various claims in this action. Ridenour himself alleged that his removal violated his rights as a credit union member under 12 U.S.C. §§ 1760, 1761, and 1761b. Those sections of the Federal Credit Union Act, 12 U.S.C. §§ 1751 et seq., he claimed, entitled him to remedies for violations of his rights to democratic governance of his credit union. Ridenour also asserted claims under Title VII, 42 U.S.C. § 2000e and various state law causes of action. In a claim under the FCUA similar to Ridenour's, Geidner, Hopper, and Perry alleged "wrongful interference with [the] credit union's democratic governance" supposedly in violation of 12 U.S.C. § 1760. They sought relief for the frustration of their credit union voting rights caused by the removal of Ridenour, for whom they had voted in the March 1987 board of directors election. In addition to some state law claims, Geidner, Hopper, and Perry also sued under Title VII, alleging that during 1987 they were either discharged or constructively discharged from

their jobs at the credit union in retaliation for their role in pursuing the complaints against Nahas.

The district court dismissed the entire action for lack of subject matter jurisdiction. The court held that the claims invoking the FCUA did not "arise under" federal law because resolution of a federal question would play no significant role in the proceedings. It also held that none of the Title VII claims could support federal jurisdiction, because none of the plaintiffs had filed a timely charge with the Equal Employment Opportunity Commission, a jurisdictional prerequisite to a civil suit under Title VII. Finally, having found no independent basis for federal jurisdiction, the court held that it lacked the power to exercise pendent jurisdiction over the state law claims. This appeal followed, with appellants challenging only the dismissal of their FCUA and state-law pendent claims.[1]

## II

We consider first the district court's jurisdictional dismissal of the claims alleging violations of rights secured by the FCUA.

## A

Though the district court seems to have analyzed the jurisdictional issue as being whether the necessity to resolve substantial federal questions caused appellants' state-law claims to "arise under" federal law, *see, e.g., Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983); *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), it is plain from the record that appellants' invocations of the provisions of the FCUA were by way of asserting federal causes of action allegedly conferred by or implicit in those provisions. Count I of Ridenour's complaint alleges that the defendants' actions in removing him from the Board of Directors of the

---

**1.** Apart from unhelpful conclusory statements that federal courts have jurisdiction to hear such claims, the appellants have not challenged the district court's critical ruling that no EEOC complaint was ever filed by any of the plaintiffs. This unchallenged finding supports dismissal of all the Title VII claims.

credit union "wrongfully and illegally interfered with [his] rights and duties pursuant to 12 U.S.C. Section 1761 and 1761b...." [2] Count II alleges wrongful interference

2. Ridenour does not specifically identify which provisions of 12 U.S.C. §§ 1761 and 1761b give him the right of action he asserts. Title 12 U.S.C. § 1761 establishes the management structure of credit unions and contains provisions relating to the composition of the board, supervisory committee, and the credit committee and to compensation for board and committee members:

(a) The management of a Federal credit union shall be by a board of directors, a supervisory committee, and where the bylaws so provide, a credit committee. The board shall consist of an odd number of directors, at least five in number, to be elected annually by and from the members as the bylaws provide. Any vacancy occurring on the board shall be filled until the next annual election by appointment by the remainder of the directors.

(b) The supervisory committee shall be appointed by the board of directors and shall consist of not less than three members nor more than five members, one of whom may be a director other than the compensated officer of the board. A record of the names and addresses of the executive officers, members of the supervisory committee, credit committee, and loan officers, shall be filed with the Administration within ten days after their election or appointment.

(c) No member of the board or of any other committee shall, as such, be compensated, except that reasonable health, accident, similar insurance protection, and the reimbursement of reasonable expenses incurred in the execution of the duties of the position shall not be considered compensation.

12 U.S.C. § 1761b provides a partial listing of the powers and duties of the board of directors of a Federal credit union:

The board of directors shall meet at least once a month and shall have the general direction and control of the affairs of the Federal credit union. Minutes of all meetings shall be kept. Among other things, the board of directors shall—

(1) act upon applications for membership or appoint membership officers from among the members of the credit union, other than the board member paid as an officer, the financial board officer, any assistant to the paid officer of the board or to the financial officer, or any loan officer;

(2) provide adequate fidelity coverage for officers and employees having custody of or handling funds according to regulations issued by the Board;

(3) fill vacancies on the board of directors until successors elected at the next annual meeting have qualified;

(4) if the bylaws provide for an elected credit committee, fill vacancies on the credit committee until successors elected at the next annual meeting have qualified;

(5) appoint the members of the supervisory committee and, if the bylaws so provide, appoint the members of the credit committee;

(6) have charge of investments including the right to designate an investment committee of not less than two to act on its behalf;

(7) determine the maximum number of shares, share certificates, and share draft accounts, and the classes of shares, share certificates, and share draft accounts;

(8) subject to any limitations of this subchapter, determine the interest rates on loans, the security, and the maximum amount which may be loaned and provided in lines of credit;

(9) authorize interest refunds to members of record at the close of business on the last day of any dividend period from income earned and received in proportion to the interest paid by them during that dividend period;

(10) if the bylaws so provide, appoint one or more loan officers and delegate to these officers the power to approve or disapprove loans, lines of credit, or advances from lines of credit;

(11) establish the par value of the share;

(12) subject to the limitations of this title and the bylaws of the credit union, provide for the hiring and compensation of officers and employees;

(13) if the bylaws so provide, appoint an executive committee of not less than three directors to act on its behalf and any other committees to which it can delegate specific functions;

(14) prescribe conditions and limitations for any committee which it appoints;

(15) review at each monthly meeting a list of approved or pending applications for membership received since the previous monthly meeting together with such other related information as it or the bylaws require;

(16) provide for the furnishing of the written reasons for any denial of a membership application to the applicant upon the written request of the applicant;

(17) in the absence of a credit committee, and upon the written request of a member, review a loan application denied by a loan officer;

(18) declare the dividend rate to be paid on shares, share certificates, and share draft accounts pursuant to the terms and conditions of section 1763 of this title;

(19) establish and maintain a system of internal controls consistent with the regulations of the Board;

(20) establish lending policies; and

(21) do all other things that are necessary and proper to carry out all the purposes and powers of the Federal credit union, subject to regulations issued by the Board.

with Ridenour's right, under 12 U.S.C. § 1760, to a democratically governed credit union.[3] The other plaintiffs allege, inter alia, that they had voted for Ridenour's election to the Board of Directors and that his wrongful removal violated their § 1760 rights to democratic governance of the credit union. All of the plaintiffs asked for damages and injunctive and declaratory relief for these statutory violations.

The appellee's challenge to the existence of federal question jurisdiction over these claims as pleaded is the classic one, that no such claims exist under federal law. To consider such a challenge requires a two-stage approach. At the threshold is the question whether the federal claim as pleaded is "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court] or otherwise completely devoid of merit as not to involve a federal controversy" so that dismissal for lack of federal jurisdiction is warranted without more. *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666, 94 S.Ct. 772, 776, 39 L.Ed.2d 73 (1974). If that cannot be said, the court of necessity has and must exercise jurisdiction to decide the federal question of whether the cause of action exists. *See Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

■ The preliminary jurisdictional test of facial insubstantiality is a rigorous one against the challenger. The mere claim that a right exists under federal law suffices to avoid summary dismissal unless it is facially insubstantial or frivolous, and even a non-frivolous claim that a remedy may be implied from a federal statute will suffice. *See* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3562, at 40–41.

■ If dismissal for facial insubstantiality is avoided, further inquiry into the exist-

ence of federal question jurisdiction of course turns on the existence of the underlying claim as pleaded. The existence of such a claim is of course a necessary predicate for the existence of federal jurisdiction over it. But if it is determined on this inquiry that jurisdiction fails because no such federal claim exists, the proper disposition is to dismiss on the merits for failure to state a claim rather than for want of subject matter jurisdiction. *See Bell,* 327 U.S. at 682, 66 S.Ct. at 776; *Mount Healthy City Board of Education v. Doyle,* 429 U.S. 274, 279, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977).

■ Applying this approach, we cannot say as a preliminary matter that the appellants' allegations that federal law gives them causes of action are so wholly insubstantial or patently without merit as to preclude federal jurisdiction. Although we disagree with its holding, at least one federal court of appeals has found a federal cause of action for discharged credit union employees as a matter of federal common law. *See Barany v. Buller,* 670 F.2d 726 (7th Cir.1982). Because the appellants' contentions that federal law gives them a cause of action are not plainly insubstantial, we must take jurisdiction to address on the merits the federal question of the claims' existence thereby raised. We hold, however, that the asserted federal causes of action do not exist, and we will therefore affirm the district court's dismissal of these claims on the alternative ground that the appellants failed to state a claim upon which relief could be granted.

**B**

■ At the outset of our inquiry into the existence of the federal cause of action pleaded, we note that the appellants have not contended that any of the provisions of the FCUA cited in their complaint, 12 U.S.C. §§ 1760, 1761 and 1761b, gives them

---

**3.** Title 12 U.S.C. § 1760 provides for meetings of credit union members and establishes voting rights and procedures:

The fiscal year of all Federal credit unions shall end December 31. The annual meeting of each Federal credit union shall be held at such place as its bylaws shall prescribe. Spe-

cial meetings may be held in the manner indicated in the bylaws. No member shall be entitled to vote by proxy, but a member other than a natural person may vote through an agent designated for the purpose. Irrespective of the number of shares held, no member shall have more than one vote.

an express right of action for the wrongs alleged. Our review of the statute satisfies us that, consistent with the holdings of every court to consider the question, no express right of action can be found in the statute. *See, e.g., Barany v. Buller,* 670 F.2d 726 (7th Cir.1982); *Montford v. Robins Federal Credit Union,* 691 F.Supp. 347 (M.D.Ga.1988); *National Temple Non-Profit Corp. v. National Temple Community Federal Credit Union,* 603 F.Supp. 807 (E.D.Pa.1985). Although the appellants' briefs do not frame their contentions in these terms, they have essentially argued that we might find either an implied right of action in the statute or that we should fashion such a cause of action as a matter of federal common law. As we discuss below, we see no warrant for recognizing a cause of action by resort to either approach.

### (1)

The question whether an implied right of action may be found in federal statutes is basically guided by the multifactored test of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). But at least since *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), it has been clear that the ultimate question will always be whether Congress intended to create the asserted cause of action, that the other *Cort* factors are merely subsidiary to that inquiry. *See Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 521, 98 L.Ed.2d 512 (Scalia, J., concurring) (1988); *California v. Sierra Club,* 451 U.S. 287, 293, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981); *Transamerica Mortgage Advisors (TAMA) v. Lewis,* 444 U.S. 11, 23–24, 100 S.Ct. 242, 249, 62 L.Ed.2d 146 (1979); *Touche Ross,* 442 U.S. at 575–76, 99 S.Ct. at 2488–89. We focus, then, on the evidence, if any, that Congress intended to create a cause of action for the kinds of wrongs alleged to have occurred in Ridenour's removal from the board of directors.

The appellants appear to be correct in their general assertions that the statutory provisions under which they claim were designed to promote the democratic governance of their local credit unions. *See La-*

*Caisse Populaire Ste–Marie (St. Mary's Bank) v. United States,* 563 F.2d 505, 509 (1st Cir.1977) (democratic control and management of credit unions significantly distinguishes credit unions from savings and loan institutions). It does not follow, however, from the general observation that Congress afforded members some opportunities to participate in the governance of their credit unions that it also intended to allow members to bring private actions for alleged irregularities in the management. The few courts to consider the issue have concluded that the FCUA does not imply a private right of action for wrongful removal from a managerial, supervisory, or employee position in a federal credit union. *See, e.g., Barany,* 670 F.2d at 730–31; *Heiskala v. Johnson Space Center Federal Credit Union,* 474 F.Supp. 448 (S.D.Tex. 1979). Furthermore, the appellants have brought to our attention no positive indicia of legislative intent to create a cause of action. More significantly, our review of the statutory structure reveals two features of the statute that persuade us to the contrary that Congress intended not to create the asserted causes of action.

Section 1786 of the FCUA authorizes the Board of the NCUA to take a variety of administrative actions against federal credit unions and persons affiliated with them to safeguard the undoubted federal interest in the financial security of federal credit unions. *See* Amicus Curiae Brief of The National Credit Union Administration at 2–3. The Board may, for instance, terminate the insured status of credit unions, 12 U.S.C. § 1786(a), issue cease and desist orders, § 1786(f), or remove from office "institution-affiliated" parties such as officers and directors of local credit unions, § 1786(g)(1). When the Board removes a person from office pursuant to the power in § 1786(g)(1), that person is entitled to an administrative hearing, § 1786(g)(4), and to judicial review of the administrative ruling in the appropriate United States Court of Appeals or in the United States Court of Appeals for the District of Columbia Circuit, § 1786(j)(2). Had Ridenour been removed by the Board of the NCUA, he pre-

sumably would have been able to avail himself of this remedial structure. But in Congress' decision to afford some protection to a credit union-affiliated party who is removed by the national Board, we see a strong negative inference that Congress did not deem the removal of a director by his fellow members on a local credit union's board sufficiently important to warrant creating a federal cause of action.[4]

Recent amendments to the FCUA provide even more immediate evidence of a lack of congressional intent to create the cause of action urged by appellants. In August 1989, the FCUA was amended in conjunction with a massive restructuring of federal law governing certain financial institutions. *See* Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRRE), Pub.L. No. 101–73, 1989 U.S.Code Cong. & Admin.News (103 Stat.) 183. Although the bulk of FIRRE was directed towards reforming the savings and loan industry, several of its provisions affected the NCUA. Most noteworthy for present purposes was Section 932 of FIRRE, which amended the NCUA to create a new cause of action for whistleblowers, now codified at 12 U.S.C. § 1790b. In enacting that amendment, Congress recognized a need to protect all credit union employees who report violations of law to the national Board or to the Attorney General.[5] In light of the fact that Congress has so recently spoken to the question of credit union employee job protection, we are not prepared to find a congressional intent to allow a cause of action for discharge or removal under circumstances other than those now specifically identified as the basis for private rights of action. Congress' silence on the subject during the enactment of FIRRE supports the view that it did not intend alleged violations of

§§ 1760, 1761, and 1761b to be the subject of private actions.

### (2)

■ Appellants also argue that there is federal subject matter jurisdiction over their claims because of the unique federal interests implicated by the governance and personnel policies of federal credit unions. As discussed above, we have jurisdiction to consider the jurisdictional argument because it raises nonfrivolous federal questions about the existence of the asserted causes of action. To the extent, however, that the appellants by their reliance on *Barany v. Buller*, 670 F.2d 726 (7th Cir. 1982), may be suggesting that unique federal interests in this context should lead us to fashion a federal remedy as a matter of federal common law, we decline to do so. In so declining, we respectfully disagree with the contrary holding of the Seventh Circuit in *Barany.*

Though there is "no federal general common law," *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), there is a recognized "need and authority" for federal courts to create specific federal common law in some carefully limited circumstances. *Texas Industries v. Radcliff Materials*, 451 U.S. 630, 640, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981). Broadly, the appropriate occasion may arise in two types of cases: where a federal rule of decision is "necessary to protect uniquely federal interests," *id.* (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 426, 84 S.Ct. 923, 939, 11 L.Ed.2d 804 (1964)), and where Congress has empowered the courts to fashion a body of substantive law, *see, e.g., Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972

---

4. Indeed, even the NCUA's Board has made it its policy not to become involved in disputes concerning the democratic governance of local credit unions "unless the matter also presents an issue regarding the financial safety and soundness of the operation of the credit union." Amicus Curiae Brief of the National Credit Union Administration at 2. This policy choice is reflected in the Board's decision not to seek to give the bylaws governing the internal adminis-

tration of credit unions the effect of agency regulation. *Id.* at 9.

5. Even had the appellants sued under this new cause of action, they would have failed to state a claim since they have not alleged that they reported possible violations of law to the NCUA Board or to the Attorney General.

(1957). Only the first could possibly be present here, and we think it is not.

The category of unique federal interests justifying the creation of federal common law has been sharply circumscribed by the Supreme Court. Sufficient interests have been found only in cases involving "the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty...." *Texas Industries*, 451 U.S. at 641, 101 S.Ct. at 2067.

Most critical here is the principle that when Congress has legislated on a question that is claimed to be appropriate for the creation of federal common law, courts must assume that Congress has articulated all of the governing federal standards. *See, e.g., Clearfield Trust Co. v. United States*, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943) (federal common law may be invoked only "in absence of an applicable Act of Congress"); *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625, 98 S.Ct. 2010, 2015, 56 L.Ed.2d 581 (1978) (when federal legislation "speak[s] directly to a question, the courts are not free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless."). *See also,* M. Field, Sources of Law: The Scope of Federal Common Law, 99 Harv.L.Rev. 881, 925 (1986).

Application of that principle here precludes our undertaking any effort to fashion the body of federal common law urged by appellant. As noted in Part II B(1), Congress originally provided administrative and judicial remedies for a credit union-affiliated party when removed by the national Board, but in no other circumstances. More recently, Congress has amended the statute to create a remedy for whistleblowing employees and managers who report to the Board or to the Attorney General, but not when the matter is handled by the local credit union's supervisory committee. Perhaps most significant of all may be the NCUA's choice not to give the bylaws that govern removal of board members the authority of an agency regulation: "Federal courts lack authority to impose more strin-gent [standards] under federal common law than those imposed by the agency charged by Congress with administering the comprehensive scheme." *City of Milwaukee v. Illinois*, 451 U.S. 304, 320, 101 S.Ct. 1784, 1794, 68 L.Ed.2d 114 (1981).

### III

■ As indicated, the district court dismissed all the state claims on the basis that once the federal claim was dismissed for lack of jurisdiction, so too must be the state claims because of their lack of any independent jurisdictional basis. As we have held, however, the federal claims under the FCUA were substantial enough as pleaded to invoke federal jurisdiction to inquire into their merits. That sufficed to support pendent jurisdiction over the state-law claims even if the federal claims were, as they should have been, then dismissed on the merits. *See generally* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3564, at 74–75. Dismissal of the state-law claims for lack of an independent basis of jurisdiction was therefore improper. *See Webb v. Bladen*, 480 F.2d 306, 309–10 (4th Cir.1973). Although the court might have dismissed them in an exercise of its discretion under *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), it did not of course purport to exercise that discretion. Though we might attempt to do so in the first instance, we do not think we should, but should instead remand to allow the district court to exercise its discretion on the matter. *See Webb*, 480 F.2d at 310. The usual rule— once indeed expressed as a flat one, *see Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139—is that where federal claims are dismissed before trial, any pendent state claim should go out as well. But it is now recognized that there can be exceptions based upon unusual circumstances, such as statutes of limitation problems that warrant retention of the claims for resolution even after threshold dismissal of federal claims. *See Rosado v. Wyman*, 397 U.S. 397, 404–05, 90 S.Ct. 1207, 1213–14, 25 L.Ed.2d 442 (1970) (amount of time and energy already

expended a factor to be considered). We are in no position to know whether there might be any such reasons here for going against the usual rule of dismissal in threshold stages. Accordingly we will remand the state-law claims to the district court for determination there whether they should be dismissed without prejudice or retained for resolution under the pendent jurisdiction.

## IV

In summary, we affirm dismissal of the Title VII and FCUA claims, but we vacate that part of the judgment dismissing the FCUA claims on jurisdictional grounds and remand for entry of a judgment dismissing them on the merits. We vacate that part of the judgment dismissing the state-law claims for lack of jurisdiction and remand those claims for determination whether they should be dismissed without prejudice or retained for decision under the pendent jurisdiction.

SO ORDERED.