**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SHANNON AIELLO, a minor by her
parents and next friends; MARK
AIELLO; CHRISTINE AIELLO,
Plaintiffs-Appellants,

v.

NANCY S. GRASMICK, (officially)

State Superintendent of Schools;
MARYLAND STATE DEPARTMENT OF
EDUCATION; CAROL S. PARHAM,
(officially) Superintendent; ANNE
ARUNDEL COUNTY BOARD OF
EDUCATION,
Defendants-Appellees.

LAURA GREIF, a minor by her
parents and next friends; SUSAN
GREIF; PETER GREIF,
Plaintiffs-Appellants,

and

AVIVA BENSIMON, a minor, by her
parents and next friends, Simon and

Helen Bensimon; SIMON BENSIMON;
HELEN BENSIMON; GABRIEL
ZAMALLOA, a minor, by his parents
and next friends, Lorena and Edgar
Zamalloa; LORENA ZAMALLOA;
EDGAR ZAMALLOA,
Plaintiffs,

No. 97-1389

No. 97-1400

v.

NANCY S. GRASMICK, in her official
capacity; MARYLAND STATE
DEPARTMENT OF EDUCATION; PAUL
VANCE, in his official capacity,
Superintendent; MONTGOMERY
COUNTY PUBLIC SCHOOLS,
Defendants-Appellees.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CA-96-3323-MJG, CA-94-3313-MJG)

Argued: October 3, 1997

Decided: June 9, 1998

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge,
and HERLONG, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Gary P. Peller, GEORGETOWN UNIVERSITY LAW
CENTER, Washington, D.C., for Appellants. Jo Ann Grozuczak Goe-
dert, Assistant Attorney General, Baltimore, Maryland; Eric Charles
Brousaides, LAW OFFICE OF RICHARD EKSTRAND, Greenbelt,
Maryland, for Appellees. **ON BRIEF:** Matthew B. Bogin, Michael J.
Eig, BOGIN & EIG, Washington, D.C., for Appellants. J. Joseph Cur-
ran, Jr., Assistant Attorney General, Baltimore, Maryland; P. Tyson

Bennett, REESE & CARNEY, Annapolis, Maryland; Zvi Greismann, MONTGOMERY PUBLIC SCHOOLS, Rockville, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The plaintiffs, disabled children and their parents, appeal the district court's dismissal of their lawsuit for lack of Article III standing. The plaintiffs sued on the novel theory that they were denied a "due process" right guaranteed to them by the Individuals with Disabilities Education Act (IDEA) when the defendants retroactively implemented a new statute that revised Maryland's system for administrative review of special education placements. We hold that the procedure the plaintiffs claim they were due under the IDEA, a local hearing formerly provided for by Maryland law, was not incorporated into the IDEA. Since local hearings are not an IDEA-given right, the denial of the plaintiffs' pending local hearings did not raise federal retroactivity concerns and the plaintiffs' claim is without merit. However, this claim was not so insubstantial as to warrant a dismissal for lack of standing. Accordingly, we affirm the district court's judgment of dismissal, but we do so on the ground that the plaintiffs failed to state a claim upon which relief can be granted.

I.

As the Supreme Court has said, the IDEA, 20 U.S.C.§ 1400-1485 (1994),[1] is "an ambitious federal effort," funded by grants, "to assist

_____

[1] Unless otherwise specified, we refer to the IDEA as in effect at the time relevant to this lawsuit, that is, prior to the effective date of the Individuals with Disabilities Education Act Amendments for 1997, Pub. L. No. 105-17, 111 Stat. 37.

3

state[s] . . . in educating [disabled] children." <u>Board of Educ. v. Rowley</u>, 458 U.S. 176, 179 (1982). To qualify for federal special education funding under the IDEA, a state must have a policy that assures disabled children a "free appropriate public education" (FAPE). <u>See</u> 20 U.S.C. § 1412(1). The "State educational agency" (the state's department or board of education) is responsible for distributing IDEA funds to "local educational agencies" (local boards of education or school districts). <u>See</u> 20 U.S.C. § 1411(c). For a local educational agency to receive these funds, it must establish an"individualized education program" (IEP) for each disabled child at the beginning of each school year. <u>See</u> 20 U.S.C. § 1414(a)(5).

To ensure that parents have the opportunity to participate in the development of their child's IEP, the IDEA requires state and local educational agencies (that receive funding under the Act) to establish several procedural safeguards. <u>See</u> 20 U.S.C.§ 1415(a). For example, educational agencies receiving IDEA funds must provide the parents of a disabled child the right to examine all relevant records with respect to the child's educational program. These agencies must give parents written notice of any proposal to change (or of any refusal to change) the child's program. <u>See</u> § 1415(b)(1)(A), (C). A disabled child's parents must also be given the opportunity to obtain an independent educational evaluation for their child. <u>See</u> § 1415(b)(1)(A). Further, IDEA-funded educational agencies must provide parents with "an opportunity to present complaints with respect to any matter relating to . . . the provision of a [FAPE]" for the child. § 1415(b)(1)(E).

Whenever such a complaint is made, "the parents or guardian shall have an opportunity for an impartial due process hearing." § 1415(b)(2). The hearing "shall be conducted by the State educational agency or by the local educational agency . .., as determined by State law or by the State educational agency." <u>Id.</u> However, states allowing a local agency to hold the hearing must provide "any party aggrieved by the findings and decision rendered in such a hearing" with an opportunity for impartial state level review of the decision rendered in the local hearing. § 1415(c). Finally, "any party aggrieved by the findings and decision" at the state level hearing "shall have the right to bring a civil action with respect to the complaint" in state or federal court. § 1415(e)(2).

4

In this case plaintiffs Shannon Aiello and Laura Greif are two disabled children who attend school in Maryland, in Anne Arundel County and Montgomery County, respectively. Under the IDEA, defendant Maryland State Department of Education (MSDE) is the state educational agency and defendants Anne Arundel County Board of Education and the Montgomery County Public Schools are the local educational agencies. It is undisputed that the IDEA requires the MSDE and the pertinent local agency to provide Shannon Aiello and Laura Greif with a FAPE.

This dispute began when the parents of Shannon Aiello and the parents of Laura Greif made separate claims that their children had been denied a FAPE because school officials did not place their children in appropriate special education settings. Each set of parents registered a complaint and requested a due process hearing. The Aiellos filed their request with Anne Arundel County on November 3, 1995, and the Greifs filed theirs with Montgomery County on June 13, 1996. Both requests were filed in compliance with the requirements of the MSDE's procedures then existing for challenging special education placements.

At the time the Greifs and Aiellos requested due process hearings, Maryland had in place a two-tiered system for review of special education placements. The first tier consisted of a local hearing by an impartial hearing officer or hearing board. See Md. Code Ann., Educ. § 8-415(a)(2)(I)-(ii) (Michie, 1995 Supp.) (current version at Md. Code Ann., Educ. § 8-413(c)-(d) (Michie 1997)). The second tier involved state level review by an impartial three-person panel, consisting of one administrative law judge (ALJ) from the Maryland Office of Administrative Hearings (OAH) and two hearing officers. See § 8-415(b)(5).

In April 1996 the Maryland General Assembly amended section 8-415. This amendment, effective July 1, 1996, eliminated the local hearing and replaced the state level panel with a single ALJ from OAH. See Act effective July 1, 1996, ch. 190, 1996 Md. Laws 310 (repealing and reenacting section 8-415, with changes, as section 8-413). At the time of the amendment neither Laura Greif nor Shannon Aiello had received a local hearing. The Greifs had not yet requested a hearing; the Aiello hearing had been convened on April 14, 1996,

5

but was continued by consent of both sides before any testimony was taken.

In May 1996 the MSDE promulgated a policy to apply the new, one-tiered review system to disabled children who, like Laura Greif, had requested but not received hearings as of July 1. The policy also required the transfer to an OAH judge of cases, such as Shannon Aiello's, in which local hearings were convened before July 1 but in which no testimony had been taken. The Greifs and Aiellos were notified of the transfer of their cases to the OAH on June 17 and July 2, 1996, respectively.

The Aiellos and Greifs refused to participate in the new one-tiered system. Instead, they sued the state (MSDE) and local agencies (and the superintendent of each agency) in district court. The two families (in separate complaints) alleged that: (1) the defendants had failed to provide the children with a FAPE as required by the IDEA ("the FAPE claim") and (2) the defendants had denied them the two-tiered review process they were due under the IDEA ("the IDEA due process claim").**2** The FAPE claim was based on § 1415(e)(2) of the IDEA, and the IDEA due process claim was based on § 1415(e)(2) and 42 U.S.C. § 1983. In a pendent state law claim the plaintiffs asserted a violation of Maryland's Administrative Procedure Act ("the Maryland APA claim").

For their IDEA due process claim, the Aiellos and Greifs argued that forcing them into Maryland's new, one-tiered review system was an impermissible retroactive application of the new section 8-413, because they had "invoked their right to" local hearings before the new law's July 1 effective date. The plaintiffs argued further that they could bring this claim in federal court without first seeking relief under Maryland's new one-tiered review system because the ALJ from OAH lacked the authority to grant them local hearings. The plaintiffs contended that exhaustion of their FAPE claim was also unnecessary because any submission of that claim to the new single-

_____

**2** The plaintiffs did not claim that application of the new one-tiered review process to them violated the Due Process Clause of the United States Constitution. Instead, they claimed a right that, according to them, flows from the "due process" component of the IDEA.

6

tiered (state level) review system would moot their requests for local hearings.

The plaintiffs sought several forms of relief in their complaints in district court. Each set of parents asked the district court to order that their child be placed at a specific private school, that the particular local educational agency fund the placement, and that the agency reimburse them for the cost of tuition at that school for the 1995-96 school year. The plaintiffs also asked for a declaration that consignment of their pending cases to the new one-tiered system was a violation of the IDEA and for an injunction ordering the local agencies to provide them with local review hearings.

The district court dismissed each of the plaintiffs' claims. In considering the IDEA due process claim, the court said that exhaustion of that claim would be futile (and was therefore unnecessary) because the ALJ from OAH had no power to change Maryland's new review system. See Aiello v. Grasmick, No. 96-3323, mem. op. at 8 (D. Md. Feb. 28, 1997). The court then concluded that the procedures afforded to the plaintiffs by the new, one tiered review system did not violate any provision of the IDEA. See id. at 6-9. This conclusion led the court to hold that the plaintiffs had no standing to challenge the revised system in federal court because their concerns did not "rise to the level of `injury in fact.'" See id. at 8. Accordingly, the court dismissed the plaintiffs' IDEA due process claim for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). See id. at 9.

Once the district court decided that the plaintiffs did not have a right under the IDEA to a local hearing, it turned to the claim that the defendants had failed to provide the children with a FAPE. The FAPE claim was dismissed because the plaintiffs had not exhausted their administrative remedies under the new, single-tiered system of review. See id. at 11. The court next invoked the doctrine of sovereign immunity to dismiss the Maryland APA claim against the MSDE. See id. at 11-12. Finally, this state statutory claim against the local defendants was then dismissed because no federal claims remained. See id. at 12 (citing 28 U.S.C. § 1367(c)(3) (1994)).

The Aiellos and Greifs appealed, and their cases were consolidated.

7

II.

We first consider whether the district court erred in dismissing the plaintiffs' IDEA due process claim for lack of subject matter jurisdiction, specifically, for lack of standing. This is a question of law, so we review it de novo. See Marshall v. Meadows, 105 F.3d 904, 905-06 (4th Cir. 1997).

The subject matter jurisdiction of federal courts is limited by Article III of the Constitution to "Cases" or "Controversies." U.S. Const. Art. III, § 2, cl. 1. The doctrine of standing is an essential component of the case or controversy requirement. See Allen v. Wright, 468 U.S. 737, 750-51 (1984); Marshall, 105 F.3d at 906. For there to be Article III standing, the plaintiffs must show (1) they have suffered "injury in fact" that (2) was caused by the conduct they challenge and (3) can be remedied by a favorable judicial decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Suhre v. Haywood County, 131 F.3d 1083, 1085 (4th Cir. 1997). Only the first element of standing, injury in fact, is at issue here.

Injury in fact is defined as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan , 504 U.S. at 560 (internal citations and quotations omitted). In many cases the issue of whether the plaintiffs assert injury in fact turns on whether they have a sufficient "personal stake in the outcome of the controversy" to give them the incentive to be vigorous advocates in the litigation. See Baker v. Carr, 369 U.S. 186, 204 (1962). When plaintiffs assert their own rights there is "ordinarily little question" that they have claimed a sufficient personal stake in the outcome to claim injury in fact and therefore gain standing. Lujan, 504 U.S. at 561-62.

Sometimes, however, the injury in fact question turns not on whether the plaintiffs have a sufficient personal stake in the outcome but on whether the injury they assert is legally protected under federal law. This happens in cases where the plaintiffs assert a novel claim of federal right and contend that the deprivation of that right is the "legally protected interest" to which they have suffered "injury in fact." This is such a case. The Aiellos and Greifs allege that they suffered an injury to a right protected by the IDEA when they were

8

denied local hearings and allowed only state level hearings because (they assert) this denial was retroactive. This would be a personalized injury, but the question for standing purposes is whether it is legally protected.

Here, the district court dismissed the Aiellos' and Greifs' IDEA due process claim for lack of standing, concluding that they had "`no legally protected interest' on which to base their claim." Aiello v. Grasmick, No. 96-3323, mem. op. at 9 (D. Md. Feb 28, 1997). The court reached this conclusion after squarely deciding that Maryland's new, one-tiered review system did not violate any provision of the IDEA. See id. at 7-9. Although we ultimately conclude that the plaintiffs do not state a claim upon which relief can be granted (see part III), they do have standing.

When a court assesses whether a plaintiff has a legal interest sufficient to gain standing, it simply asks whether the federal claim is "wholly insubstantial and frivolous." Bell v. Hood, 327 U.S. 678, 682-83 (1946); see also Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666 (1974) (the test for standing is whether the plaintiffs claim is "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy"). This test "is a rigorous one against the [movant]," Ridenour v. Andrews Fed. Credit Union, 897 F.2d 715, 719 (4th Cir. 1990), and federal jurisdiction exists if there is "any foundation of plausibility to the claim," 13B C. Wright, et al., Federal Practice and Procedure § 3564, at 71 (2d ed. 1984). Even a non-frivolous assertion that a claim may be implied from a federal statute is sufficient for jurisdiction. See Ridenour, 897 F.2d at 719.

The Aiellos and Greifs allege that the defendants violated the IDEA's due process requirement by denying them local hearings. No language in the IDEA requires states to provide disabled children with local hearings, and in fact the statute explicitly gives states the option of providing either a state level hearing or a local hearing with state level review, see 20 U.S.C. § 1415(b)(2)(c). The plaintiffs acknowledge this. Nevertheless, they contend that: (1) when states provide procedural protections like local hearings that are consistent with the IDEA's goals (but not required by the Act's language), the IDEA implicitly incorporates these procedures into federal law, and (2) all

9

of the IDEA's procedural protections, including state procedures incorporated into the Act, are substantive federal entitlements. As we explain in part III, these two contentions form the basis for the plaintiffs' claim that even though the text of the IDEA makes local placement review hearings optional, once Maryland provided for local hearings and the plaintiffs requested them, the MSDE's decision to transfer their cases to the OAH for state level hearings constituted the retroactive denial of a substantive, IDEA-given right.

This is a unique claim. However, no precedent in the Supreme Court or any circuit explicitly forecloses it, and the two bases asserted to support the claim stem from non-frivolous readings of federal authorities. First, because the IDEA mandates that a disabled child's IEP meet any state educational standards that provide for a greater educational benefit than the IDEA itself requires, see Burke County Bd. of Educ. v. Denton, 895 F.2d 973, 982-83 (4th Cir. 1990), the plaintiffs argue that the IDEA also incorporates any state procedure adopted to further the goals of the IDEA, even though the procedure goes beyond what the IDEA's text requires. Second, because the Supreme Court has emphasized the importance of the IDEA's procedural protections, see Board of Educ. v. Rowley , 458 U.S. 176, 205-06 (1982), the plaintiffs argue that all of the IDEA's procedural protections (including incorporated state procedures) rise to the level of substantive entitlements. Although we ultimately reject the plaintiffs' first argument (we do not reach the second), we find neither to be completely lacking in plausibility. As a result, the claim derived from these arguments -- that once a state decides to implement local review hearings, the IDEA gives disabled children a federal right to these hearings -- is not wholly insubstantial or frivolous. Therefore, the Aiellos and Greifs had Article III standing, and the district court erred in dismissing their claim for lack of subject matter jurisdiction.

III.

Because there is federal subject matter jurisdiction, we will consider whether the plaintiffs have stated a claim upon which relief can be granted. We are comfortable in deciding this issue because the district court actually looked at the merits of the IDEA due process claim in the course of assessing its jurisdiction. See Brewster of Lynchburg, Inc. v. Dial Corp., 33 F.3d 355, 361 n.3 (4th Cir. 1994) ("We have

10

consistently recognized that even though we disagree with the reasoning of the district court, we may affirm the result on different grounds if fully supported by the record."); see, e.g., Karnak Educ. Trust v. Bowen, 821 F.2d 1517, 1520 (11th Cir. 1987) (affirming a Rule 12(b)(1) dismissal on Rule 12(b)(6) grounds). Also, the issue was fully briefed and argued to us. Further, the defendants do not contest (and thus we need not address) the district court's ruling that the plaintiffs did not have to exhaust their state administrative remedies before proceeding to federal court because exhaustion would have been futile.

As we have explained, the Aiellos and Greifs claim that they were denied a statutory "due process" right guaranteed by the IDEA when the defendants implemented Maryland's new, one-tiered special education placement review system. The plaintiffs do not claim that the IDEA generally requires that disabled children be provided with local placement review hearings. Since § 1415(b)(2) explicitly allows states to implement either a one- or two-tiered placement review system, the plaintiffs concede that states may opt not to provide disabled children with local review hearings. However, the plaintiffs argue, once a state offers disabled children the opportunity for such hearings, the state may not retroactively revoke that opportunity; if a state changes its law to do away with local hearings, it may do so only prospectively.

Here, the plaintiffs claim, the MSDE's implementation of the new Maryland Code, Education section 8-413 (and the one-tiered review system the statute created) did not violate the IDEA when MSDE denied local hearing requests made after section 8-413's July 1, 1996, effective date. That, the plaintiffs claim, was prospective implementation of section 8-413. The MSDE's mistake, the plaintiffs say, was applying the new statute to the Aiellos' and Greifs' hearing requests, which were filed before July 1. The application of section 8-413 to these pending hearing requests (and the transfer of the pending complaints to OAH for state level hearings) was retroactive, the plaintiffs argue.

Of course, it would have been improper for the MSDE to implement section 8-413's new one-tiered review system in a way that resulted in the retroactive revocation of the plaintiffs' local review hearings. New statutes are presumed not to apply retroactively absent

11

clear legislative intent to the contrary. See Landgraf v. USI Film Products, 511 U.S. 244, 265, 280 (1994).**3** However, the plaintiffs' claim that the MSDE retroactively revoked their local hearings merely begs the question of whether denying pending local hearing requests (as occurred in Laura Greif's case) or canceling scheduled local hearings (as occurred in Shannon Aiello's case) is, in fact, retroactive. Yet, whether the denial of already requested or already scheduled local hearings is retroactive depends entirely on whether disabled children have an enforceable federal right to local review hearings in the first place. This is so for two reasons.

First, a new statute is not retroactive simply because it is applied in a case arising from conduct that occurred prior to its enactment. See id. at 269. Rather, a statute is retroactive only when it "attaches new legal consequences to events completed before its enactment." Id. at 269-70. That is to say, application of a new statute in a pending case is retroactive if the statute impairs existing rights, creates new duties, increases liability for past conduct, see id. at 280, or changes existing procedures in a way that is fundamentally unfair to the litigants, see id. at 275 n.29. Therefore, a statute is not retroactive unless it adversely affects a substantive federal right or changes procedures in a way that does injustice to litigants in the case at hand.**4**

Second, the rule against retroactivity is a rule of federal statutory interpretation, not a constitutional prohibition. Retroactive state statutes are of no federal concern so long as they otherwise comport with the Constitution. See id. at 266-67. Although retroactive application of a state statute might violate the state's own rules of statutory interpretation (that is, state retroactivity law), any lawsuit brought on such

_____

**3** The defendants do not argue that the relevant legislative body intended that the new Maryland Code, Education section 8-413 be applied to pending local hearing requests. Therefore, we need not address this issue.

**4** We reject the plaintiffs' contention that the denial of their local review hearings caused them injustice. The plaintiffs have not claimed that their ability to obtain the ultimate relief they seek -- tuition reimbursement for the defendants' alleged failure to provide Shannon Aiello and Laura Greif with a FAPE -- would be hampered by the change from a one-tiered review system to a two-tiered review system.

12

a theory would not implicate federal retroactivity law. The only way a state statute's implementation would raise federal retroactivity concerns is if the state law is itself enforceable under federal law because it has been incorporated into federal law.

From the foregoing it should be clear that the Aiellos' and Greifs' claim that they were retroactively denied local review hearings is just another way of arguing that they had a substantive federal right to local review hearings when they made their hearing requests. This puts the plaintiffs right back where they started. They are faced with the obvious problem that no language in the IDEA gives them a substantive federal right to a local review hearing.

Realizing this, the Aiellos and Greifs argue that they did indeed have a substantive federal right to local review hearings. This argument is founded on the two propositions we discussed briefly in part II. First, the plaintiffs contend that the IDEA implicitly incorporates state procedures that expand on the minimum procedural protections stated in the IDEA. As a result, they argue, the IDEA turns state procedural rights into federal procedural rights. This would mean that a state's violation of its own IDEA-related procedures would violate the IDEA itself, even when (as here) the IDEA does not require the state to implement those procedures in the first place. Second, the plaintiffs contend that the IDEA is a special statute that transforms all procedural protections implemented under its auspices (like local review hearings) into substantive rights. As a result, they claim that although Maryland law created their right to local review hearings, the IDEA made that right enforceable against the defendants. If both these contentions are correct, then the IDEA guaranteed Shannon Aiello and Laura Greif a substantive federal right to the local review hearings provided for by Maryland law.

We turn to the plaintiffs' first proposition, that the IDEA incorporated the old law which provided for local review hearings, Maryland Code, Education section 8-415. We begin, as we must, with the IDEA's plain language. With regard to local review hearings, the plain language of the IDEA is precisely that, plain. The relevant section of the IDEA states that whenever a disabled child's parents (or guardian) files a complaint relating to any aspect of the child's education, "the parents or guardian shall have an opportunity for an impar-

13

tial due process hearing." 20 U.S.C.§ 1415(b)(2) (emphasis added). This language indicates that federal law entitles the parents or guardian of a disabled student to one due process hearing, not two. Section 1415(b)(2) goes on to explain that the required due process hearing "shall be conducted by the State educational agency or by the local educational agency . . ., as determined by State law or by the State educational agency." Id. (emphasis added). This language makes it quite clear that state law, not federal law, governs the question of whether due process hearings will be held at the state or local level. That being so, the denial of local hearings implicates state law, not the IDEA.[5]

The Aiellos and Greifs argue that this is an over-simplified reading of § 1415. That section, they claim, only sets forth the minimum procedural protections that states must provide to the parents of disabled children. Section 1415, they say, does not prohibit state efforts to provide additional procedural protections for parents under the auspices of the IDEA, as long as these procedures are consistent with the Act's guarantee of a FAPE. Moreover, the plaintiffs urge, whenever a state creates additional procedural protections that are consistent with the IDEA, § 1415 makes these procedures part of the IDEA insofar as they comply with the policies of the IDEA. This, the plaintiffs argue, is the plain meaning of the language in § 1415(b)(1), which states that "the procedures required by this section shall include, but shall not be limited to" the procedures listed therein.§ 1415 (b)(1) (emphasis added).

We agree that this "the procedures required . . . shall not be limited to" language suggests that states may be required (not just allowed) to provide certain procedures not set forth in § 1415 once the state has opted to provide them. However, we reject the plaintiffs' interpretation of this language as incorporating into the IDEA all state-created procedural protections. Even if the "shall not be limited to" language federalizes some state-created procedures that are not required in the

_____

**5** Of course, if the state opts for a two-tiered hearing system, the local hearing must be conducted by an impartial hearing officer, and the state agency must provide any aggrieved party with impartial review. See § 1415(b)(2), (c). These are federal rights.

14

first instance by the IDEA, it does so only in limited circumstances.**6** The "shall not be limited to" language appears only in subsection (b)(1) of § 1415 (which sets forth the procedural safeguards that states must provide in order to involve parents in the cooperative process of creating the disabled child's IEP). However, this language does not appear in the subsection we are directly concerned with in this case, subsection (b)(2) (which provides for an adversarial due process hearing, so that parents may receive impartial review of their child's IEP when they cannot otherwise settle their differences with educators). If Congress had intended for the "shall not be limited to" language to apply to subsection (b)(2), it could have manifested its intention by repeating that language in subsection (b)(2). But it did not. We think Congress did not include that language in subsection (b)(2) for a reason. Subsection (b)(2) is written to indicate that it is immaterial to Congress whether a state opts to provide for a local hearing. In our opinion, Congress would not implicitly incorporate into federal law a procedure it explicitly made optional. Accordingly, if the "shall not be limited to" language in subsection (b)(1) indicates that the IDEA may incorporate some state-created procedures that go above and beyond what the IDEA itself requires, then it does so only for those procedures implemented under the auspices of subsection (b)(1). The language therefore does not apply to subsection (b)(2).**7**

We also find no support for the plaintiffs' incorporation claim in cases like Burke County Bd. of Educ. v. Denton , 895 F.2d 973, 982-

_____

**6** Since § 1415(b)(1) does not indicate where the incorporated procedures are to originate, it is not at all clear that the "shall not be limited to" language refers to state-created procedures. This reference may be a simple reminder to states that the United States Department of Education is authorized to promulgate regulations to implement the IDEA, see, e.g., Due Process Procedures for Parents and Children, 34 C.F.R. §§ 300.500-300.515 (1998), with which states receiving IDEA funds must comply. Cf. Beth V. v. Carroll, 87 F.3d 80, 82, 84-88 (3d Cir. 1996) (citing the "shall not be limited to" language and holding that the IDEA provides plaintiffs with a cause of action to challenge a state's noncompliance with federal regulations implementing the IDEA).

**7** In any event, we note that future IDEA plaintiffs will not be able to rely on this language for support. Congress omitted the "shall not be limited to" language when it recently amended the IDEA. See Pub. L. No. 105-17, 111 Stat. 37, 88.

15

83 (4th Cir. 1990), where we recognized that the IDEA incorporates state educational standards that exceed those minimum goals envisioned by the IDEA itself. This is because the IDEA explicitly incorporates all state educational standards into the IDEA, see 20 U.S.C. § 1401(18)(B), but does not explicitly incorporate local hearings into federal law.

In sum, we hold that the IDEA did not incorporate Maryland Code, Education section 8-415, the law that formerly provided for local review hearings. Because the plaintiffs cannot establish the first proposition necessary to their IDEA due process claim, we need not consider the second proposition. The plaintiffs' IDEA due process claim must be rejected for failure to state a claim upon which relief may be granted.

IV.

Since we reject the Aiellos' and Greifs' IDEA due process claim on the merits, we also must dismiss their FAPE claim for failure to exhaust state administrative remedies. In their briefs the plaintiffs argued that exhaustion of the FAPE claim was unnecessary because it was closely intertwined with their IDEA due process claim (which, they argued, they did not have to exhaust). At oral argument, however, the plaintiffs' lawyer conceded that they would have to exhaust state administrative review of their FAPE claim if we rejected their due process claim.[8] Therefore, we uphold the lower court's dismissal of the FAPE claim.

We also affirm the district court's dismissal of the plaintiffs' Maryland APA claim against the local educational agencies and the individual defendants.[9] Normally, we would remand this state law claim, because the presence of federal jurisdiction over the plaintiffs' IDEA due process claim renders the district court's dismissal for lack of

_____

[8] As a result, we need not address the question the plaintiffs originally posed to us, whether plaintiffs may bring exhaustible IDEA claims directly to district court when they also allege an inexhaustible IDEA claim over which the court has jurisdiction.
[9] The plaintiffs have not appealed the district court's grant of summary judgment for the MSDE on sovereign immunity grounds.

16

supplemental jurisdiction permissive rather than mandatory. Compare 28 U.S.C. § 1367(a) (1994) (district courts have supplemental jurisdiction over related state law claims in cases where they otherwise have original jurisdiction) with id. § 1367(c)(3)(district courts may decline to exercise supplemental jurisdiction in cases where they have dismissed all other federal claims); see also Davis v. Pak, 856 F.2d 648, 651 (4th Cir. 1988) ("the difference between dismissing a weak federal claim via Fed. R. Civ. P. 12(b)(6) or in dismissing it for lack of jurisdiction" is that "[i]f a court disposes of the claim on the merits, it retains the power to decide any . . . pendent state law claims" but if it dismisses for lack of jurisdiction, "the court is also without jurisdiction to decide any state issues."). However, remand is unnecessary here because the district court has already indicated in dicta that it would exercise its discretion under § 1367(c)(3) to dismiss the plaintiffs' state law claims once their IDEA claims were dismissed. See Aiello v. Grasmick, No. 96-3323, mem. op. at 12 (D. Md. Feb. 28, 1997). Therefore, the district court's orders dismissing the plaintiffs' complaints are

AFFIRMED.

17